Justice GINSBURG delivered the opinion of the Court.
This case involves two proceedings, one pending in state court, the other in federal court. Each seeks review of an Iowa Utilities Board (IUB or Board) order. And each presents the question whether Windstream Iowa Communications, Inc. (Windstream), a local telecommunications carrier, may impose on Sprint Communications, Inc. (Sprint), intrastate access charges for telephone calls transported via the Internet. Federal-court jurisdiction over controversies of this kind was confirmed in Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). Invoking Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the U.S. District Court for the Southern District of Iowa abstained from adjudicating Sprint's complaint in deference to the parallel state-court proceeding, and the Court of Appeals for the Eighth Circuit affirmed the District Court's abstention decision.
We reverse the judgment of the Court of Appeals. In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)( NOPSI ) ("[T]here is no doctrine that ... pendency of state judicial proceedings excludes the federal courts."). This Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief. See id., at 368, 109 S.Ct. 2506.
Younger exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. This Court has extended Younger abstention to particular state civil proceedings that are akin to criminal prosecutions, see Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." NOPSI, 491 U.S., at 368, 109 S.Ct. 2506.
Circumstances fitting within the Younger doctrine, we have stressed, are "exceptional"; they include, as catalogued in NOPSI, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id., at 367-368, 109 S.Ct. 2506. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).
I
Sprint, a national telecommunications service provider, has long paid intercarrier access fees to the Iowa communications company Windstream (formerly Iowa Telecom) for certain long distance calls placed *589 by Sprint customers to Windstream's in-state customers. In 2009, however, Sprint decided to withhold payment for a subset of those calls, classified as Voice over Internet Protocol (VoIP), after concluding that the Telecommunications Act of 1996 preempted intrastate regulation of VoIP traffic.[1] In response, Windstream threatened to block all calls to and from Sprint customers.
Sprint filed a complaint against Windstream with the IUB asking the Board to enjoin Windstream from discontinuing service to Sprint. In Sprint's view, Iowa law entitled it to withhold payment while it contested the access charges and prohibited Windstream from carrying out its disconnection threat. In answer to Sprint's complaint, Windstream retracted its threat to discontinue serving Sprint, and Sprint moved, successfully, to withdraw its complaint. Because the conflict between Sprint and Windstream over VoIP calls was "likely to recur," however, the IUB decided to continue the proceedings to resolve the underlying legal question, i.e., whether VoIP calls are subject to intrastate regulation. Order in Sprint Communications Co. v. Iowa Telecommunications Servs., Inc., No. FCU-2010-0001, 2010 WL 421105 (IUB, Feb. 1, 2010), p. 6 (IUB Order). The question retained by the IUB, Sprint argued, was governed by federal law, and was not within the IUB's adjudicative jurisdiction. The IUB disagreed, ruling that the intrastate fees applied to VoIP calls.[2]
Seeking to overturn the Board's ruling, Sprint commenced two lawsuits. First, Sprint sued the members of the IUB (respondents here) [3] in their official capacities in the United States District Court for the Southern District of Iowa. In its federal-court complaint, Sprint sought a declaration that the Telecommunications Act of 1996 preempted the IUB's decision; as relief, Sprint requested an injunction against enforcement of the IUB's order. Second, Sprint petitioned for review of the IUB's order in Iowa state court. The state petition reiterated the preemption argument Sprint made in its federal-court complaint; in addition, Sprint asserted state law and procedural due process claims. Because Eighth Circuit precedent effectively required a plaintiff to exhaust state remedies before proceeding to federal court, see Alleghany Corp. v. McCartney, 896 F.2d 1138 (1990), Sprint urges that it filed the state suit as a protective measure. Failing to do so, Sprint explains, risked losing the opportunity to obtain any review, federal or state, should the federal court decide to abstain after the expiration of the Iowa statute of limitations. See Brief for Petitioner 7-8.[4]
*590 As Sprint anticipated, the IUB filed a motion asking the Federal District Court to abstain in light of the state suit, citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The District Court granted the IUB's motion and dismissed the suit. The IUB's decision, and the pending state-court review of it, the District Court said, composed one "uninterruptible process" implicating important state interests. On that ground, the court ruled, Younger abstention was in order. Sprint Communications Co. v. Berntsen, No. 4:11-cv-00183-JAJ (S.D.Iowa, Aug. 1, 2011), App. to Pet. for Cert. 24a.
For the most part, the Eighth Circuit agreed with the District Court's judgment. The Court of Appeals rejected the argument, accepted by several of its sister courts, that Younger abstention is appropriate only when the parallel state proceedings are "coercive," rather than "remedial," in nature. 690 F.3d 864, 868 (2012); cf. Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 522 (C.A.1 2009) ("[P]roceedings must be coercive, and in most cases, state-initiated, in order to warrant abstention."). Instead, the Eighth Circuit read this Court's precedent to require Younger abstention whenever "an ongoing state judicial proceeding ... implicates important state interests, and ... the state proceedings provide adequate opportunity to raise [federal] challenges." 690 F.3d, at 867 (citing Middlesex County Ethics Comm. v. Garden State Bar Assn., 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). Those criteria were satisfied here, the appeals court held, because the ongoing state-court review of the IUB's decision concerned Iowa's "important state interest in regulating and enforcing its intrastate utility rates." 690 F.3d, at 868. Recognizing the "possibility that the parties [might] return to federal court," however, the Court of Appeals vacated the judgment dismissing Sprint's complaint. In lieu of dismissal, the Eighth Circuit remanded the case, instructing the District Court to enter a stay during the pendency of the state-court action. Id., at 869.
We granted certiorari to decide whether, consistent with our delineation of cases encompassed by the Younger doctrine, abstention was appropriate here. 569 U.S. ----, 133 S.Ct. 1805, 185 L.Ed.2d 810 (2013).[5]
II
A
Neither party has questioned the District Court's jurisdiction to decide whether federal law preempted the IUB's decision, and rightly so. In Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), we reviewed a similar federal-court challenge to a state administrative adjudication. In that case, as here, the party seeking federal-court review of a state agency's decision urged that the Telecommunications Act of 1996 preempted the state action. We had "no doubt that federal courts ha[d federal question] jurisdiction under [28 U.S.C.] § 1331 to entertain such a suit," id., at 642, 122 S.Ct. 1753, and nothing in the Telecommunications Act detracted from that conclusion, see id., at 643, 122 S.Ct. 1753.
Federal courts, it was early and famously said, have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."
*591 Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821). Jurisdiction existing, this Court has cautioned, a federal court's "obligation" to hear and decide a case is "virtually unflagging." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Parallel state-court proceedings do not detract from that obligation. See ibid.
In Younger, we recognized a "far-from-novel" exception to this general rule. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)( NOPSI ). The plaintiff in Younger sought federal-court adjudication of the constitutionality of the California Criminal Syndicalism Act. Requesting an injunction against the Act's enforcement, the federal-court plaintiff was at the time the defendant in a pending state criminal prosecution under the Act. In those circumstances, we said, the federal court should decline to enjoin the prosecution, absent bad faith, harassment, or a patently invalid state statute. See 401 U.S., at 53-54, 91 S.Ct. 746. Abstention was in order, we explained, under "the basic doctrine of equity jurisprudence that courts of equity should not act ... to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparably injury if denied equitable relief." Id., at 43-44, 91 S.Ct. 746. "[R]estraining equity jurisdiction within narrow limits," the Court observed, would "prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions." Id., at 44, 91 S.Ct. 746. We explained as well that this doctrine was "reinforced" by the notion of " 'comity,' that is, a proper respect for state functions." Ibid.
We have since applied Younger to bar federal relief in certain civil actions. Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), is the pathmarking decision. There, Ohio officials brought a civil action in state court to abate the showing of obscene movies in Pursue's theater. Because the State was a party and the proceeding was "in aid of and closely related to [the State's] criminal statutes," the Court held Younger abstention appropriate. Id., at 604, 95 S.Ct. 1200.
More recently, in NOPSI, 491 U.S., at 368, 109 S.Ct. 2506, the Court had occasion to review and restate our Younger jurisprudence. NOPSI addressed and rejected an argument that a federal court should refuse to exercise jurisdiction to review a state council's ratemaking decision. "[O]nly exceptional circumstances," we reaffirmed, "justify a federal court's refusal to decide a case in deference to the States." Ibid. Those "exceptional circumstances" exist, the Court determined after surveying prior decisions, in three types of proceedings. First, Younger precluded federal intrusion into ongoing state criminal prosecutions. See ibid. Second, certain "civil enforcement proceedings" warranted abstention. Ibid. (citing, e.g., Huffman, 420 U.S., at 604, 95 S.Ct. 1200). Finally, federal courts refrained from interfering with pending "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." 491 U.S., at 368, 109 S.Ct. 2506 (citing Juidice v. Vail, 430 U.S. 327, 336, n. 12, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), and Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 13, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). We have not applied Younger outside these three "exceptional" categories, and today hold, in accord with NOPSI, that they define Younger 's scope.
B
The IUB does not assert that the Iowa state court's review of the Board *592 decision, considered alone, implicates Younger. Rather, the initial administrative proceeding justifies staying any action in federal court, the IUB contends, until the state review process has concluded. The same argument was advanced in NOPSI, 491 U.S., at 368, 109 S.Ct. 2506 .We will assume without deciding, as the Court did in NOPSI, that an administrative adjudication and the subsequent state court's review of it count as a "unitary process" for Younger purposes. Id., at 369, 109 S.Ct. 2506. The question remains, however, whether the initial IUB proceeding is of the "sort ... entitled to Younger treatment." Ibid.
The IUB proceeding, we conclude, does not fall within any of the three exceptional categories described in NOPSI and therefore does not trigger Younger abstention. The first and third categories plainly do not accommodate the IUB's proceeding. That proceeding was civil, not criminal in character, and it did not touch on a state court's ability to perform its judicial function. Cf. Juidice, 430 U.S., at 336, n. 12, 97 S.Ct. 1211 (civil contempt order); Pennzoil, 481 U.S., at 13, 107 S.Ct. 1519 (requirement for posting bond pending appeal).
Nor does the IUB's order rank as an act of civil enforcement of the kind to which Younger has been extended . Our decisions applying Younger to instances of civil enforcement have generally concerned state proceedings "akin to a criminal prosecution" in "important respects." Huffman, 420 U.S., at 604, 95 S.Ct. 1200. See also Middlesex, 457 U.S., at 432, 102 S.Ct. 2515 (Younger abstention appropriate where "noncriminal proceedings bear a close relationship to proceedings criminal in nature"). Such enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. See, e.g.,Middlesex, 457 U.S., at 433-434, 102 S.Ct. 2515 (state-initiated disciplinary proceedings against lawyer for violation of state ethics rules). In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. See, e.g.,Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (state-initiated administrative proceedings to enforce state civil rights laws); Moore v. Sims, 442 U.S. 415, 419-420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents); Trainor v. Hernandez, 431 U.S. 434, 444, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil proceeding "brought by the State in its sovereign capacity" to recover welfare payments defendants had allegedly obtained by fraud); Huffman, 420 U.S., at 598, 95 S.Ct. 1200 (state-initiated proceeding to enforce obscenity laws). Investigations are commonly involved, often culminating in the filing of a formal complaint or charges. See, e.g.,Dayton, 477 U.S., at 624, 106 S.Ct. 2718 (noting preliminary investigation and complaint); Middlesex, 457 U.S., at 433, 102 S.Ct. 2515 (same).
The IUB proceeding does not resemble the state enforcement actions this Court has found appropriate for Younger abstention. It is not "akin to a criminal prosecution." Huffman, 420 U.S., at 604, 95 S.Ct. 1200. Nor was it initiated by "the State in its sovereign capacity." Trainor, 431 U.S., at 444, 97 S.Ct. 1911. A private corporation, Sprint, initiated the action. No state authority conducted an investigation into Sprint's activities, and no state actor lodged a formal complaint against Sprint.
In its brief, the IUB emphasizes Sprint's decision to withdraw the complaint that commenced proceedings before the Board. At that point, the IUB argues, Sprint was *593 no longer a willing participant, and the proceedings became, essentially, a civil enforcement action. See Brief for Respondents 31. [6] The IUB's adjudicative authority, however, was invoked to settle a civil dispute between two private parties, not to sanction Sprint for commission of a wrongful act. Although Sprint withdrew its complaint, administrative efficiency, not misconduct by Sprint, prompted the IUB to answer the underlying federal question. By determining the intercarrier compensation regime applicable to VoIP calls, the IUB sought to avoid renewed litigation of the parties' dispute. Because the underlying legal question remained unsettled, the Board observed, the controversy was "likely to recur." IUB Order 6. Nothing here suggests that the IUB proceeding was "more akin to a criminal prosecution than are most civil cases." Huffman, 420 U.S., at 604, 95 S.Ct. 1200 .
In holding that abstention was the proper course, the Eighth Circuit relied heavily on this Court's decision in Middlesex.Younger abstention was warranted, the Court of Appeals read Middlesex to say, whenever three conditions are met: There is (1) "an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) ... provide[s] an adequate opportunity to raise [federal] challenges." 690 F.3d, at 867 (citing Middlesex, 457 U.S., at 432, 102 S.Ct. 2515). Before this Court, the IUB has endorsed the Eighth Circuit's approach. Brief for Respondents 13.
The Court of Appeals and the IUB attribute to this Court's decision in Middlesex extraordinary breadth. We invoked Younger in Middlesex to bar a federal court from entertaining a lawyer's challenge to a New Jersey state ethics committee's pending investigation of the lawyer. Unlike the IUB proceeding here, the state ethics committee's hearing in Middlesex was indeed "akin to a criminal proceeding." As we noted, an investigation and formal complaint preceded the hearing, an agency of the State's Supreme Court initiated the hearing, and the purpose of the hearing was to determine whether the lawyer should be disciplined for his failure to meet the State's standards of professional conduct. 457 U.S., at 433-435, 102 S.Ct. 2515. See also id., at 438, 102 S.Ct. 2515 (Brennan, J., concurring in judgment) (noting the "quasi-criminal nature of bar disciplinary proceedings"). The three Middlesex conditions recited above were not dispositive; they were, instead, additional factors appropriately considered by the federal court before invoking Younger.
Divorced from their quasi-criminal context, the three Middlesex conditions would extend Younger to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. See Tr. of Oral Arg. 35-36. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule." Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting Colorado River, 424 U.S., at 813, 96 S.Ct. 1236). In short, to guide other federal courts, we today clarify *594 and affirm that Younger extends to the three "exceptional circumstances" identified in NOPSI, but no further.
* * *
For the reasons stated, the judgment of the United States Court of Appeals for the Eighth Circuit is
Reversed.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

The Federal Communications Commission has yet to provide its view on whether the Telecommunications Act categorically preempts intrastate access charges for VoIP calls. See In re Connect America Fund, 26 FCC Rcd. 17663, 18002, ¶ 934 (2011) (reserving the question whether all VoIP calls "must be subject exclusively to federal regulation").

At the conclusion of the IUB proceedings, Sprint paid Windstream all contested fees.

For convenience, we refer to respondents collectively as the IUB.

Since we granted certiorari, the Iowa state court issued an opinion rejecting Sprint's preemption claim on the merits. Sprint Communications Co. v. Iowa Utils. Bd., No. CV-8638, App. to Joint Supp. Brief 20a-36a (Iowa Dist.Ct., Sept. 16, 2013). The Iowa court decision does not, in the parties' view, moot this case, see Joint Supp. Brief 1, and we agree. Because Sprint intends to appeal the state-court decision, the "controversy ... remains live." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 291, n. 7, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

The IUB agrees with Sprint that our decision in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), cannot independently sustain the Eighth Circuit's abstention analysis. See Brief for Respondents 9; cf. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).