BRISCOE, Circuit Judge,
concurring in the denial of rehearing en banc.
I write in support of the denial of rehearing en banc for two reasons: to comment on the unusual procedural step this court has taken in this untimely sua sponte request for an en banc poll, and to set the record straight regarding the merits of the panel decision.
I
From a procedural perspective, our consideration and denial of rehearing en banc will surely come as a surprise to the parties, who have clearly moved on. The parties intentionally bypassed further review by the panel or the full court, and instead returned to the district court. And the parties have since stipulated to the entry of a preliminary injunction in favor of plaintiff Planned Parenthood Association of Utah (PPAU).
As our docket reflects, both the panel opinion and the judgment in this case issued on July 12, 2016. The July 26, 2016 deadline for filing a petition for rehearing en banc subsequently passed without the parties taking any action. See Fed. R. App. P. 35(c) (“A petition for rehearing en banc must be filed within the time prescribed by Rule 40 for filing a petition for rehearing.”); Fed. R. App. P. 40(a)(1) (“Unless the time is shortened or extended by order or local rule, a petition for panel rehearing may be filed within 14 days after entry of judgment.”); see also Fed. R. App. P. 26(a)(1) (outlining how time is computed under the Federal Rules of Appellate Procedure “[w]hen the period is stated in days”). Under the Federal Rules of Appellate Procedure and our own Tenth Circuit Rules, that left only the mandate to issue.
On August 1, 2016, however, a member of this court, acting despite the absence of a timely filed petition for rehearing by any party, called for a poll. The poll ultimately failed by a vote of 6 to 4, with two judges recusing. The mandate issued on August 8, 2016, prior to the completion of voting, but after it was clear that the poll would fail. According to the district court’s docket, the parties, unaware of our untimely sua sponte activities, stipulated to the entry of a preliminary injunction in favor of PPAU on August 31, 2016, and have moved on with this litigation in district court.
In my view, we should be extraordinarily cautious in exercising our inherent authority to sua sponte rehear a case when the parties themselves have chosen not to seek en banc review. And, presumably, our inherent authority in that regard is, at an absolute minimum, bounded by the standards outlined in Fed. R. App. P. 35 and 10th Cir. R. 35. Although the dissent cites to the standard for en banc review outlined in Fed. R. App. 35(a) and asserts that “the panel acted inconsistently with this court’s previously uniform practice when it comes to questions concerning our standard of review and the burden of proof,” Dissent at 1307-08, there is simply no substance to that assertion, and thus no justification for the unusual procedure that has been invoked.
II
Turning to the merits, the dissent mis-characterizes this litigation and the panel *1303 opinion at several turns. To begin with, the dissent incorrectly states that “the preliminary injunction motion turned in significant measure on the question whether [PPAU] could show that it was likely to succeed at trial on its unconstitutional conditions claim.” Dissent at 1307. As a matter of fact, PPAU asserted three claims— an equal protection claim and two unconstitutional conditions claims—and a substantial portion of the panel opinion was devoted to analyzing whether PPAU had established a substantial likelihood of success on the merits of its equal protection claim (the panel agreed with the district court that PPAU failed in this regard),
As for the unconstitutional conditions claims, it is true that PPAU’s likelihood of success ultimately turned on the assessment of evidence concerning Governor Herbert’s motive for issuing the August 14,2015 directive. See Planned Parenthood Ass’n of Utah v. Herbert, 828 F.3d 1245, 1260 (10th Cir.2016) (“[T]hat leaves the question of whether PPAU can establish that Herbert issued the Directive in retaliation for PPAU’s exercise of those [constitutional] rights.”). But the dissent again mischaracterizes how both the district court and the panel performed this assessment. To begin with, the dissent incorrectly states that “the district court found that the Governor’s stated intention appeared to be his true intention” in suspending PPAU’s funding. Dissent at 1307. In other words, the dissent states that the district court made an express finding of fact “that the Governor ‘did not retaliate against Plaintiff.’” Id. at 1260 (quoting Planned Parenthood Ass’n of Utah v. Herbert, No. 2:15-CV-693, 2015 WL 9412539, at *6 (D. Utah Dec. 22, 2015)). The dissent in turn asserts that the panel proceeded to review that factual finding de novo. Id.
What in truth occurred is that the panel, after carefully considering the district court’s opinion, concluded that the district court did not make a factual finding regarding the Governor’s motive for issuing the directive, but rather made a legal determination regarding whether the limited evidence before it would be sufficient to allow a factfinder to find in favor of PPAU on the motive issue. Planned Parenthood, 828 F.3d at 1261, n.6 (“As we read the above-quoted language, the district court was merely assessing the limited evidence presented by the parties and determining, as a matter of law, whether PPAU had established a likelihood of succeeding on its unconstitutional conditions claim.”). Indeed, the panel remarked that “it would have been unusual for the district court to make a factual finding on this key issue, given the procedural posture of the case, the fact that no witnesses testified at the preliminary injunction hearing, and the fact that Herbert ha[d] not been deposed yet.” Id. And the panel in turn reviewed the district court’s legal determination de novo. In a related footnote, the panel also stated that, “even assuming that the district court intended to make a factual finding on this issue, we conclude that such finding was clearly erroneous.” Id. That is because the district court failed to consider at all the admissions made by Governor Herbert in responding to PPAU’s motion for preliminary injunction.
Dissatisfied with the panel’s analysis, the dissent asserts that Rule 52(a)(2) imposed an obligation on the district court “to offer a finding on the only and hotly disputed question in this case,” i.e., Governor Herbert’s motive for issuing the directive, and that “the proper course for [the panel] would have been to remand the matter for the district court to discharge its fact-finding function, not to attempt [its] own de novo assessment of the record on appeal.” Dissent at 1309.
*1304 The problem with this assertion is twofold. First, the dissent misreads Rule 52(a)(2). That rule states: “In granting or refusing an interlocutory injunction, the court must ... state the findings and conclusions that support its action.” Fed. R. Civ. P. 52(a)(2). In other words, Rule 52(a)(2) generally “requires [a district] court to make findings of fact and conclusions of law if it grants or refuses a preliminary injunction.” 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2576 at 283 (3d ed. 2008). But the Rule obviously affords a district court with discretion in how it goes about resolving the unique issues presented in each case. Thus, although the district court in this case could have made a preliminary factual finding regarding Governor Herbert’s motive, it did not, in the panel’s view, do so, and there was no requirement under Rule 52(a)(2) that the panel remand the case to the district court to make a factual finding on this issue. Second, the panel did not, as the dissent implies, make its own factual findings, but instead properly conducted a de novo review of what it deemed to be the district court’s legal determination.
The dissent also takes issue with the panel’s alternative conclusion that, even assuming the district court intended to make a factual finding regarding Governor Herbert’s motive, the district court clearly erred in doing so. To begin with, the dissent complains that “the panel never proceeded to explain why the district court’s finding qualified as ‘plainly implausible,’ ‘irrational,’ or enjoyed ‘no support’ in the record.” Dissent at 1309. In turn, the dissent asserts that the panel could not “have found the district court’s finding reversible under the correct standard of review had it tried” because “PPAU offered ‘virtually no evidence’ to support its account of the Governor’s intentions.” Id. (quoting Judge Bacharach Concur, at 1309).
To be sure, the panel opinion did not offer a detailed explanation of its alternative conclusion. But that was precisely because it was an alternative conclusion contained in a footnote. And, most certainly, the lack of a detailed explanation for an alternative holding is certainly no basis for granting en banc review. In any event, the panel based its alternative holding on the fact that the district court failed to consider all of the evidence that was contained in the record. Most notably, this included, as described in detail in the panel opinion, the admissions made by Governor Herbert in responding to PPAU’s motion for preliminary injunction.
As for those admissions, the dissent suggests that this is a “new” piece of evidence of the panel’s “own creation.” Dissent at 1311. By no means, however, was this a new piece of evidence unbeknownst to the parties or the district court. As the panel opinion clearly noted, it was Herbert’s opposition brief to PPAU’s motion for preliminary injunction that included the specific admissions to factual allegations contained in PPAU’s complaint. Planned Parenthood, 828 F.3d at 1261 (“[I]n opposing PPAU’s motion for preliminary injunction in the district court, Herbert made more specific admissions.”).
The dissent then attempts to reframe those admissions, asserting that “[t]he panel apparently overlooked the qualifying phrase ‘describing his response to the videos’ and assumed that the Governor admitted all of PPAU’s allegations.” Dissent at 1311 (emphasis in original). “In fact,” the dissent asserts, “the Governor’s brief merely and unsurprisingly acknowledges the complaint’s description of the Governor’s response to the videos—namely that, shortly after viewing them, he came to the belief that Planned Parenthood’s conduct warranted the defunding of certain pro *1305 grams.” Dissent at 1311 (emphasis in original).
Again, however, this refraining belies the record. As the panel opinion explained,
PPAU’s complaint contains numerous factual allegations regarding Herbert’s issuance of the Directive. App., Vol. 1 at 11—14. Defendants, in their memorandum in opposition to PPAU’s motion for preliminary injunction, stated: “For only the purposes of this brief opposing [PPAU’s] motion for preliminary injunction, Governor Herbert does not dispute the factual allegations in paragraphs 12 through 22 of [PPAU’s] Complaint describing his response to the [CMP] videos.” Dist. Ct. Docket No. 19 at ix. In other words, Herbert admitted the factual allegations contained in paragraphs 12 through 22 of PPAU’s complaint for purposes of the preliminary injunction proceedings.
Planned Parenthood, 828 F.3d at 1261, n.7. Notably, paragraphs 12 through 22 of PPAU’s complaint were contained in the “FACTUAL BACKGROUND” section under a heading entitled “GOVERNOR HERBERT’S DIRECTIVE.” Dist. Ct. Docket No. 2 at 6. And, as the panel opinion accurately described them, Herbert’s admissions to those paragraphs directly concerned the issuance of his directive:
To begin with, he admitted that the CMP videos involved other affiliates of Planned Parenthood and not PPAU. [App., Vol. 1] at 12; Dist. Ct. Docket No. 19 at ix. Herbert further admitted that “there is no evidence, or even accusation, that PPAU has ‘colored outside’ of any lines, including because PPAU does not participate in any program that provides fetal tissue for scientific research.” App., Vol. 1 at 12; Dist. Ct. Docket No. 19 at ix. Herbert also admitted that none of the federal funds that flow through the UDOH to PPAU are “used to provide abortions.” App., Vol. 1 at 12; Dist. Ct. Docket No. 19 at ix. In addition, Herbert admitted that the accusations made , by CMP in the videos regarding Planned Parenthood and its other affiliates had not been proven and indeed were false. App., Vol. 1 at 11-12; Dist. Ct. Docket No, 19 at ix. Lastly, Herbert essentially agreed that the national “political climate ■... [wa]s very hostile to Planned Parenthood.” App., Vol. 1 at 3; Dist. Ct. Docket No. 19 at viii-ix.
Id. at 1261-62. Had the panel, as the dissent suggests, attributed to the Governor a series of admissions' he never made, we presumably would have -heard directly from the Governor, either by way of a petition for panel rehearing or a petition for rehearing en banc, that we had misstated the Governor’s admissions. The Governor’s silence, however,. speaks volumes.
The dissent also asserts; curiously, that the panel, by construing Herbert’s admissions in the manner that it did, failed to afford “the sort of comity this court normally seeks to show the States and their elected representatives.” Dissent at 1311 “[T]he notion of comity,” however, involves “a proper respect for state functions.” Sprint Commc’ns v. Jacobs, — U.S. -, 134 S.Ct. 584, 591, 187 L.Ed.2d 505 (2013); see also Michigan v. Bay Mills Indian Cmty., — U.S. -, 134 S.Ct. 2024, 2048, 188 L.Ed.2d 1071 (2014) (noting that “the practical aim of comity” is to “allay[ ] friction between sovereigns”). Precisely how the panel’s interpretation of Herbert’s ad? missions could have violated the notion of comity—an argument, by the way, that Herbert himself has never made—is unclear.
That leaves only one other error that the dissent contends the panel committed: “relaxing] PPAU’s burden of proof and *1306 even seem[ing] to reverse it.” Dissent at 1310. According to the Dissent, PPAU was obligated to “show its ‘right to relief ... clear[ly] and unequivocally],’ ” and the panel failed to hold PPAU to this obligation. Id. (quoting Petrella v. Brownback, 787 F.3d 1242, 1256 (10th Cir. 2015) (brackets added by Dissent)). There is no merit to the dissent’s complaints on this point, however, because the purported error is tied directly to the dissent’s mischar-acterization of the record and the evidence contained in it, in particular the admissions made by Governor Herbert in responding to PPAU’s motion for preliminary injunction. As explained in the panel opinion, the evidence, when considered in its proper context, was more than sufficient for PPAU to carry its burden of proof.
In the end, the panel opinion was faithful to circuit precedent, including the applicable standards of review, and the record on appeal. As a result, there is simply no basis upon which to grant rehearing en bane.