[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-12964

_____

BRUCE PETTWAY,
EMPLOYER BENEFITS CONSULTING LLC,

Plaintiffs-Appellants,

*versus*

STEVE MARSHALL,
Attorney General, in his individual and official
capacities,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:19-cv-01073-KOB

_____

Before ROSENBAUM, TJOFLAT, Circuit Judges, and STEELE,* District Judge.

PER CURIAM:

In this 42 U.S.C. § 1983 case, we must consider whether the district court correctly determined that *Younger* abstention was not appropriate and that Defendant-Appellee Alabama's Attorney General Steve Marshall was entitled to qualified immunity. After careful review of the briefs and records, and with the benefit of oral argument, we affirm the decision of the district court.

## I.    Factual and Procedural Background

This case arose out of Alabama's investigation into an illegal gambling operation. State agents suspected Super Highway Bingo ("Highway Bingo") of hosting an illegal casino in Birmingham, Alabama, which is in Jefferson County. On April 9, 2019, a search of the building revealed that Highway Bingo was operated by several organizations, including Brighton Ventures—a business registered in Madison County, Alabama. Financial documents and banking records showed that Brighton Ventures made payments to various individuals and entities. One of those payments took the form of a $15,500 check made out to Plaintiff-Appellant Bruce Pettway and

---

* The Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

20-12964                 Opinion of the Court                 3

his company Employer Benefits Consulting, LLC ("EBC").[1] Pettway endorsed the check and deposited it into EBC's BBVA bank account at a BBVA branch in Jefferson County.

The Attorney General's office suspected that the money paid to Pettway was the fruit of Highway Bingo's allegedly unlawful gambling operation. So on June 7, Otis Perkins, an agent with the Attorney General's office, sought and obtained a warrant from a Madison County judge to search and seize the contents of the EBC account.

Perkins executed the warrant at a BBVA branch in Madison County. At the time, the account contained between $240,000 and $260,000.[2] Once Perkins executed the warrant, BBVA froze the entire account, depriving Pettway of access to his money.

On July 3, 2019, the Attorney General's Office filed an *in rem* asset forfeiture petition in Madison County Circuit Court seeking forfeiture and "condemnation" of the money in the BBVA account. But the Attorney General's Office did not serve Pettway with notice of the forfeiture action for another 16 days—July 19, 2019.

---

[1] Pettway explained that the check was for a "consulting fee." We assume that's true. Still, Pettway doesn't dispute that the check itself says it was for a "revenue share."

[2] In some filings Pettway alleges his account contained approximately $240,000. In others he alleges it contained $260,000. $240,000 is the primary figure Pettway uses, so we use it, too.

4                  Opinion of the Court                20-12964

Meanwhile, on July 10, 2019, Pettway obviously learned of the freezing, and he and EBC filed a 42 U.S.C. § 1983 lawsuit against Attorney General Steve Marshall in the United States District Court for the Northern District of Alabama. Pettway sought a preliminary and permanent injunction to unfreeze the BBVA account and the $240,000 contained within it. He alleged that the government's seizure violated both the Fourth and Eighth Amendments to the United States Constitution.

Given the pending state forfeiture proceeding, the district court expressed concern that it may need to exercise *Younger* abstention[3] and asked Marshall to focus his anticipated motion to dismiss on that issue. Soon after, Marshall moved to dismiss, asking the district court to abstain under *Younger*.

Pettway's reply centered on an exception to *Younger*: when a state-court action is brought in "bad faith" and for the purpose of "harassment," a federal court need not abstain. *See Younger*, 401 U.S. at 53. Along these lines, Pettway suggested that Marshall seized and sought forfeiture of Pettway's assets because of Marshall's "ongoing feud" with Pettway's Brother: Jefferson County Sheriff Mark Pettway.

---

[3] *Younger v. Harris*, 401 U.S. 37 (1971) (requiring federal courts to abstain from adjudicating claims where adjudication would interfere with an ongoing state proceeding that (a) implicates important state interests and (b) provides the plaintiff an adequate forum to raise their constitutional claims).

Pettway offered several allegations in support of his bad-faith claim: (1) Marshall "threatened to 'handle' Sheriff Pettway" because of Marshall's disapproval of the Sheriff's enforcement of Alabama gambling laws; (2) Marshall filed the forfeiture action 100 miles away from Jefferson County (where the deposit was made and Pettway's bank account was located); (3) Marshall failed to provide Pettway timely notice of the filing of the forfeiture action under Alabama law (citing Ala. R. Civ. P. 64); (4) Marshall delayed service of the forfeiture petition for over two weeks; (5) Marshall failed to provide Pettway's attorney a copy of the affidavit in support of the search and seizure warrant; (6) Marshall "falsely represented" in the forfeiture petition that EBC's account "was opened at the time [Highway Bingo] began operations."

The district court agreed with Pettway, finding he made a plausible showing that the Alabama case was initiated in bad faith. Along with the grounds Pettway offered, the court relied on two other facts tending to show bad faith. First, Marshall was seeking a $240,000 forfeiture, despite having evidence of only $15,500 in unlawful gambling proceeds. Second, the State's forfeiture petition incorrectly insinuated that the $240,000 belonged to Brighton Ventures, rather than to EBC. The district court concluded that these allegations "[t]aken together, and as true," revealed a plausible claim that "the State's actions against the Plaintiffs were politically or personally motivated, have been procedurally tainted, were all with the intent to harass Plaintiffs, and were all in bad faith."

The day after the district court denied Marshall's motion to dismiss under *Younger*, the Attorney General's Office filed an amended forfeiture petition seeking only $15,500. The State stipulated to the release of the rest of Pettway's money.

Pettway filed an amended complaint against Marshall in his individual and official capacity,[4] alleging violations of the Fourth and Eighth Amendments. The Eighth Amendment claim alleges that, by seizing an amount of money (approximately $240,000) that was disproportionate to both the amount in dispute ($15,500) and the maximum fine ($6,000) for the suspected crime (gambling),[5] the government subjected Pettway to an unconstitutionally excessive fine. The Fourth Amendment claim asserts that seizing an amount of money "totally out of proportion to the maximum criminal fine ($6,000) for violation of the State's gambling laws" was an unreasonable seizure.

Marshall filed a second motion to dismiss. This time, he presented multiple grounds for dismissal, including *Younger* abstention, qualified immunity, and absolute prosecutorial immunity. The district court granted Marshall's motion, concluding he was

---

[4] The amended complaint also named Special Agent Otis Perkins (the person who obtained and executed the seizure warrant) as a defendant. Technically, the suit against Perkins was against him in only his official capacity. So after Pettway moved to dismiss his claims against the defendants in their official capacities, the district court dismissed all claims against Perkins.

[5] Ala. Code §§ 13A-12-23, 13A-5-12.

entitled to qualified immunity for both of Pettway's constitutional claims. The court did not reach the prosecutorial-immunity issue, nor did it revisit *Younger*.

Pettway now appeals.

## II.    Standard of Review

We review de novo a district court's decision to grant a motion to dismiss, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Mesa Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005). As for a district court's decision to abstain (or not abstain), we review that for abuse of discretion. *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1266 (11th Cir. 2019); *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1231 (11th Cir. 2006).

## III.    Discussion

We affirm the district court's judgment dismissing Pettway's complaint. In Section A, we explain why we do not abstain under *Younger*. And Section B shows why Marshall is entitled to qualified immunity.

### A.    Younger *Abstention*

When applicable, *Younger* abstention requires a federal court to abstain from adjudicating a claim. *Tokyo Gwinnett*, 940 F.3d at 1267. The *Younger* doctrine "rests on notions of federalism and comity and the desire to avoid duplicative proceedings." *Id.*

8                        Opinion of the Court                    20-12964

We conduct the *Younger* analysis in three steps.  First, we consider whether a qualifying state-court proceeding is pending. *See id.*  If that's the case, second, the court must consider the factors set forth in *Middlesex County Ethics Committee v. Garden State Bar Association*, 477 U.S. 423, 432 (1982), to evaluate whether abstention is appropriate.  *Tokyo Gwinnett*, 940 F.3d at 1268.  If the court views abstention as appropriate after consideration of the *Middlesex* factors, then at step three, the court must determine whether any exception to *Younger* applies.  *Middlesex*, 477 U.S. at 435 (describing "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate," as exceptions to *Younger*).  When the *Younger* conditions are not satisfied, a federal court should undertake its "virtually unflagging obligation to exercise [its] jurisdiction . . . ." *Tokyo Gwinnett*, 940 F.3d at 1267 (quotation omitted).

As we have mentioned, the first step of the *Younger* analysis asks whether there is a qualifying state-court proceeding. "*Younger* abstention applies only in three 'exceptional circumstances': (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)).  Here, the state forfeiture proceeding qualifies because it is a civil enforcement proceeding brought by the state, seeking to confiscate alleged proceeds of criminal activity.  *See Sprint Commc'ns*, 571 U.S. at 78.

We therefore proceed to *Younger*'s second step. At this step, we consider the *Middlesex* factors. That is, we evaluate whether "(1) there is an 'ongoing' state-court proceeding at the time of the federal action; (2) the state proceeding implicates an important state interest; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Tokyo Gwinnett*, 940 F.3d at 1268 (citing *Middlesex*, 477 U.S. at 432). We have interpreted the first *Middlesex* factor as requiring "interference" with the ongoing state-court proceeding. *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003) ("If there is no interference, then abstention is not required.").

Here, the first and third *Middlesex* factors are lacking—essentially for the same reasons. Pettway's suit focuses on Alabama's seizure of approximately $224,500 from his bank account. Indeed, Pettway concedes that he "makes no complaint about the $15,500 seized from his bank account." He argues that the seizure of the $224,500 amounted to an excessive fine under the Eighth Amendment and an unreasonable seizure under the Fourth Amendment.

But since Alabama amended its forfeiture petition and released its freeze on the $224,500, the state-court proceeding involves only the $15,500 of the seized funds that Pettway does not challenge. Pettway's constitutional challenges to the seizure of the $224,500—in the context of the forfeiture proceeding—would therefore be moot, since Alabama is not seeking forfeiture of that money. A successful challenge to the $224,500 seizure in the

forfeiture proceeding would neither afford Pettway relief nor impact Alabama's claim to the $15,500.  Thus, Pettway's federal suit does not interfere with the state-court proceeding.  Nor do we believe that proceeding provides an adequate forum for Pettway to pursue his constitutional claims.

Given these circumstances, *Younger* abstention is not required, and so it is not appropriate to exercise it.  *See Middlesex*, 477 U.S. at 432; *31 Foster Children*, 329 F.3d at 1276.  We therefore need not consider whether any exception to *Younger* abstention applies.

### B.    *Qualified Immunity*

We turn next to the question of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a government official shows he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official violated clearly established federal law. *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019).

To satisfy that burden, the plaintiff must show that (1) the facts he alleges establish the violation of a constitutional right, and (2) "the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Maddox v. Stephens*, 727 F.3d

20-12964          Opinion of the Court          11

1109, 1120 (11th Cir. 2013) (citing *Pearson*, 555 U.S. at 232). Here, no one disputes that Marshall was acting within the scope of his discretionary authority. So the burden falls on Pettway to show that Marshall violated his constitutional rights and that those rights were clearly established. Because Pettway fails to show that his constitutional rights were violated, he cannot overcome qualified immunity.

### 1. Eighth Amendment

Pettway first argues that the temporary freeze on the $224,500 in his account violated the Excessive Fines Clause of the Eighth Amendment.[6] He posits that Marshall obtained the freeze on his entire account as punishment, and that purported punishment was disproportionate to the amount alleged to be connected to the illegal gambling operation.

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has explained that "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense."

---

[6] As we have mentioned, in his reply brief, Pettway disclaims any alleged constitutional violation for the $15,500 seized from his account that is currently the subject of a forfeiture proceeding in state court. Pettway clarifies that the constitutional violations he alleges stem from "the seizure of the additional $224,500 from his bank account." Our discussion therefore considers only those funds that were temporarily frozen and have since been released.

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). The Excessive Fines Clause therefore "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (citation omitted).

Pettway cannot show that the government's temporary seizure is the type of payment needed to establish a violation of the Excessive Fines Clause. A permanent deprivation of property—like the kind that results from a forfeiture proceeding—can be considered a payment. *Austin v. United States*, 509 U.S. 602, 622 (1993). But a temporary freeze cannot. *See Coleman v. Watt*, 40 F.3d 255, 263 (8th Cir. 1994). Rather, to state a claim under the Excessive Fines Clause, a plaintiff must have suffered a permanent deprivation of the property in question. Because the government released the disputed funds, the district court correctly dismissed Pettway's Eighth Amendment claim.[7]

---

[7] To be sure, "the government may not by exercising its power to seize, effect a de facto forfeiture by retaining the property seized indefinitely." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1212 (10th Cir. 2001). In some cases, the government's excessive delay of a civil-forfeiture proceeding could amount to a due-process violation. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562–63 (1983); *see also Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) ("A complaint of continued retention of legally seized property raises an issue of procedural due process under the Fourteenth Amendment."). Pettway does not raise a due-process claim, and we take no position on whether the

20-12964               Opinion of the Court                    13

### 2.       Fourth Amendment

Pettway also argues that the temporary freeze violated the Fourth Amendment because, in his view, a seizure of funds that exceeds the maximum fine for the alleged crime is unreasonable. He cites *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693 (1965), for that proposition and argues that case clearly established the right he alleges was violated.  But *One 1958 Plymouth Sedan* will not take Pettway where he seeks to go.

*One 1958 Plymouth Sedan* established that the exclusionary rule applies in *in rem* forfeiture hearings.  380 U.S. at 696 ("[W]e hold that the constitutional exclusionary rule does apply to such forfeiture proceedings . . . .").  In that case, the Supreme Court recognized that the 1958 Plymouth sedan at issue in the forfeiture proceeding cost more than the maximum fine he faced for the criminal charge the sedan was involved in: transporting or importing prohibited liquor. *Id.* at 700–01 (the car cost $1,000, the maximum fine was for $500).  Because the forfeiture action could have exacted "greater punishment that the criminal prosecution," the Supreme Court thought it would be "anomalous indeed," to allow the exclusionary rule in the latter proceeding, but not the former. *Id.* at 701.

---

government's temporary seizure of Pettway's account violated any constitutional or statutory provision beyond those argued before us.

But the Court did not find the seizure unreasonable given the disparity. Instead, it simply remanded the case for a determination of whether probable cause supported the seizure. *Id.* at 702–03. So *One 1958 Plymouth Sedan* doesn't help Pettway's Fourth Amendment claim; it undermines it. Rather than holding that civil-asset forfeitures exceeding the maximum criminal penalty are per se unreasonable, the Court simply recognized that some forfeitures do exact more punishment than criminal prosecutions, and for that reason, property owners should be able to avail themselves of the exclusionary rule in those proceedings. *Id.* at 696.

Pettway also argues that probable cause did not support the temporary seizure of the $224,500. But Pettway did not advance this argument in the district court, and we have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citation omitted).

Pettway tells us that he did not make this argument earlier because the party seeking forfeiture has the burden of proving probable cause. But the action before us is not a forfeiture proceeding—it's a lawsuit Pettway filed under 42 U.S.C. § 1983. And in a § 1983 action, "the plaintiff bears the burden of persuasion on every element . . . even where the government would [] bear it in [a] criminal case" or in a forfeiture proceeding. *Gil ex rel. K.C.R. v. Judd*, 941 F.3d 504, 522–23 (11th Cir. 2019). Pettway's failure to

raise his probable-cause challenge in the district court precludes our consideration of it here.

## IV.  Conclusion

We don't make light of the alleged harm Pettway suffered because of the temporary seizure of his bank account.  Still, the district court did not err in dismissing his claims against Marshall because Marshall is entitled to qualified immunity.[8]

**AFFIRMED.**

---

[8] Because we conclude that Marshall is entitled to qualified immunity, we need not and do not consider whether Marshall may have been entitled to absolute prosecutorial immunity.