NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2925

_____

BETHLEHEM MANOR VILLAGE, LLC

v.

CITY OF BETHLEHEM; CITY COUNCIL OF THE CITY OF BETHLEHEM;
ROBERT J. DONCHEZ, Former Mayor of the City of Bethlehem

ROBERT J. DONCHEZ, Former Mayor of the City of Bethlehem,
                                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:22-cv-05215)
District Judge: Honorable Kelley B. Hodge

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 29, 2025

_____

Before: SHWARTZ, MATEY, and SCIRICA, *Circuit Judges*

(Filed: December 12, 2025)

_____

OPINION[*]

_____

_____

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

MATEY, *Circuit Judge*.

Plaintiff Bethlehem Manor Village ("BMV") is a property developer that alleges public officials in Bethlehem, Pennsylvania connived to block a new psychiatric hospital. Although BMV ultimately obtained approval from a court, it brought this suit under 42 U.S.C. § 1983 against the Mayor, the City Council, and the City.

While partially granting the Mayor's motion to dismiss, the District Court denied his claim for qualified immunity on BMV's constitutional claim, reasoning that "property rights are sufficiently established in the Third Circuit" that "a reasonable person" in the Mayor's position "would have been aware that arbitrary (and potentially discriminatory) deprivation of Plaintiff's property rights is a violation of the Constitution." *Bethlehem Manor Vill., LLC v. City of Bethlehem*, No. CV 22-5215, 2024 WL 4367922, at *11 (E.D. Pa. Sept. 30, 2024) (citing *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600–01 (3d Cir. 1995) and *Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253 (3d Cir. 1995)).[1]

We disagree because, properly framed, no caselaw "clearly established" the Mayor's alleged conduct as unlawful. While "[t]he text of § 1983 does not provide any immunities from suit," *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020), a government official may avoid section 1983 liability by asserting the affirmative defense of qualified

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. BMV contends that we lack appellate jurisdiction because the District Court's order, granting in part and denying in part a motion to dismiss, is not a final order. But "[w]hen the defense of qualified immunity is raised and denied, a defendant is generally entitled to an immediate appeal under the collateral order doctrine so long as the denial turns on an issue of law." *De Ritis v. McGarrigle*, 861 F.3d 444, 451 (3d Cir. 2017) (citation omitted).

immunity, *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Qualified immunity is "an *immunity from suit* rather than a mere defense to liability," so immunity "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (citation omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

On this second requirement, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* at 779 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In this Circuit, a right might become "clearly established" only with "binding Supreme Court [or] Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals." *Minor v. Delaware River & Bay Auth.*, 70 F.4th 168, 174 (3d Cir. 2023) (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018)).

Framing the question at a sufficient level of specificity is key, and the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Plumhoff*, 572 U.S. at 779 (quoting *al-Kidd*, 563 U.S. at 742). Instead,

3

courts must consider clearly established law "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

Here, the District Court concluded that BMV's allegations, if proven, would show that the Mayor engaged in "arbitrary or irrational decisions" depriving BMV of its "clearly established" due process right "to use or enjoyment of property." *Bethlehem Manor*, 2024 WL 4367922, at *11 (citing *Blanche Rd. Corp.*, 57 F.3d 253 and *DeBlasio*, 53 F.3d at 601). But this "broad general proposition" is divorced from "the specific context of the case" and thus too abstract to give a reasonable official in the Mayor's position proper guidance as to whether his conduct violated BMV's due process rights. *See Mullenix*, 577 U.S. at 12 (citation omitted).

Instead, we must analyze "whether the violative nature of [the Mayor's] *particular* conduct is clearly established" by existing precedent. *See id.* (citation omitted). That requires focusing on BMV's specific allegations that the Mayor: 1) called a "highly irregular" meeting where he "directly instructed" City officials to "take all steps necessary to prevent the psychiatric hospital from opening" because he did "'not want those people [i.e., psychiatric patients] here," App. 39–40; 2) influenced zoning officials who "would have granted [relevant permits] but for the direction by the Mayor," App. 49; and 3) prompted revision to local ordinances to prevent construction of the psychiatric hospital, App. 41–42, 89.

Neither the District Court nor BMV identified any prior decisions from this Circuit finding a due process violation based on similar facts. And, as we have explained, the

4

cases on which the District Court relied "cannot be reconciled" with the Supreme Court's subsequent "explanation of substantive due process analysis" in *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998), which specifies "that executive action violates substantive due process only when it shocks the conscience." *United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 399–400 (3d Cir. 2003).[2]

The misconduct alleged here in this "normal zoning dispute" does not involve "the most egregious official conduct" of "corruption or self-dealing," a "virtual 'taking,'" or attempts "to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285–86 (3d Cir. 2004) (citation omitted). As a result, our decisions do not "clearly establish" that the Mayor's particular alleged conduct violated BMV's due process rights to develop a psychiatric hospital on its property free from arbitrary zoning decisions that "shock the conscience."

\* \* \*

For these reasons, we will reverse the District Court's denial of the Mayor's motion to dismiss based on qualified immunity and remand with instructions to dismiss BMV's substantive due process claim against the Mayor.

---

[2] Nor does *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 406–07 (3d Cir. 2005), *abrogated on other grounds by Spring Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013), provide the necessary notice. *Addiction Specialists* held only that a clinic had standing to sue for alleged discrimination against future patients, *id.* at 407, but declined any analysis of immunity, writing: "we of course pass no judgment as to the merits of those claims," *id*. at 408.