[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11871
_____

D.C. Docket No. 1:15-cv-02606-TWT

TOKYO GWINNETT, LLC,
d.b.a. Tokyo Valentino

                                                    Plaintiff - Appellant,

versus

GWINNETT COUNTY, GEORGIA

                                                    Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 11, 2019)

Before MARTIN, JILL PRYOR and JULIE CARNES, Circuit Judges.

MARTIN, Circuit Judge:

In 2015, Tokyo Gwinnett, LLC (doing business as "Tokyo Valentino") sued Gwinnett County, Georgia ("the County"), challenging certain business licensing and adult entertainment ordinances. Tokyo Valentino sought damages under 42 U.S.C. § 1983 and declaratory and injunctive relief. Unfortunately for these parties, they have been litigating ever since.

The District Court first dismissed Tokyo Valentino's amended complaint on mootness grounds after the County repealed and replaced the challenged ordinances. This Court vacated the District Court's order and remanded. On remand, Tokyo Valentino filed a second amended complaint, challenging both the repealed ordinances and the County's new, replacement ordinances. Again the District Court dismissed Tokyo Valentino's claims. It is this second dismissal that is the subject of the present appeal.

Tokyo Valentino appeals the District Court's finding that it lacks standing to bring claims related to the repealed ordinances. Tokyo Valentino also appeals the District Court's decision to abstain under the doctrine established in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971). Citing Younger, the District Court abstained from hearing claims as to the replacement ordinances because of a pending state court enforcement proceeding initiated by the County against Tokyo Valentino while the earlier appeal was pending before this Court.

2

After careful consideration, and with the benefit of oral argument, we affirm the District Court's dismissal of Tokyo Valentino's claim for compensatory damages relating to the repealed ordinances. However, we reverse the dismissal of Tokyo Valentino's request for a declaratory judgment regarding whether its sale of sexual devices constitutes a lawful prior nonconforming use authorized under the repealed ordinances and whether the new ordinances' failure to include provisions grandfathering in prior lawful uses violates federal and state law. It is also our judgment that the District Court abused its discretion by abstaining under Younger from hearing Tokyo Valentino's claims stemming from the County's new ordinances. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

In May 2015, Tokyo Valentino applied for an initial business/occupation tax certificate. The application defined the business's line of work as "Retail" and appended a copy of Tokyo Valentino's license to sell tobacco products. The County approved the application, describing Tokyo Valentino as a "Tobacco Store[]" on the certificate it issued.

The next month, Tokyo Valentino wrote to the County stating it intended to stock sexually explicit materials. It specified it would be adding a small number of DVDs and magazines, and sexual devices "including dildos, vibrators, and other

3

devices commonly used to stimulate human genitalia"—to its inventory. The letter indicated Tokyo Valentino believed its plans comported with the County's ordinances and maintained Tokyo Valentino did not need any additional licenses to lawfully operate.

Weeks later, the County took two actions. First, on June 23, 2015, it adopted a resolution beginning a study into the effects of adult entertainment on its community. The resolution included a moratorium on accepting any new applications or issuing any new licenses for adult entertainment establishments until August 27, 2015, when the study was due to be completed. Second, the County responded to Tokyo Valentino in a letter dated June 24, 2015. In this letter, the County asserted that Tokyo Valentino's new description of its product lines was not consistent with the description it offered in its initial application. The County insisted Tokyo Valentino update its application and threatened to revoke its business license if it failed to do so.

After Tokyo Valentino submitted revised application materials, the County informed the business that, although it was authorized to sell most of the items it planned to stock, it would need an adult entertainment establishment license to sell sexual devices. Nevertheless, because of the County's moratorium on issuing such licenses, the County advised Tokyo Valentino of two options: it could eliminate sexual devices from its planned inventory or it could wait until the County lifted its

4

moratorium and apply for a license then.  The County also advised it would "have no choice but to enforce its ordinances" if Tokyo Valentino did not take one of the courses the County had outlined.  Instead of taking either outlined option, Tokyo Valentino filed suit on July 22, 2015.

Tokyo Valentino's first amended complaint challenged the constitutionality of several local ordinances, asserting they violated its First and Fourteenth Amendment rights.  The complaint sought an injunction barring the County from interfering with Tokyo Valentino's business operations, a "declar[ation] that [Tokyo Valentino] is a lawful use under the County's existing ordinances," nominal and compensatory damages, and attorney's fees and costs.  On September 1, 2015, the parties agreed to a consent temporary restraining order.  Under this agreement, the County would refrain from requiring Tokyo Valentino to seek an adult entertainment establishment license for ninety days so long as it operated its business according to representations made in its amended business/occupation tax certificate application.  In October 2015, the County answered Tokyo Valentino's amended complaint.

Before the agreed upon ninety-day period elapsed, the County adopted new adult entertainment ordinances and rescinded its former ordinances.  The new ordinances specifically defined "sexual device" and identified "sex paraphernalia

5

stores" as a regulated "adult establishment" for which an operator must receive a special permit.  Gwinnett County, Ga., Ordinance § 18-292 (2015).

Shortly after the new ordinances were enacted, the County moved to dismiss Tokyo Valentino's suit as moot.  Insisting dismissal was not warranted, Tokyo Valentino sought leave to amend its complaint for a second time to add claims challenging the newly enacted ordinances.  In a one paragraph order issued in January 2016, the District Court denied Tokyo Valentino's motion for leave to amend because "there may be a ripeness issue" and granted the County's motion to dismiss the action as moot.  Tokyo Valentino appealed to this Court.

Before this Court decided Tokyo Valentino's appeal, the County filed a separate action against Tokyo Valentino in the Superior Court of Gwinnett County. Gwinnett County v. Tokyo Gwinnett, LLC, Civ. No. 16-A-06816-2 (Gwinnett Cty. Super. Ct., filed July 8, 2016).  In that action, the County sought an injunction prohibiting Tokyo Valentino from operating in violation of the replacement adult entertainment ordinances.  On September 26, 2016, the Superior Court denied the County's motion for an interlocutory injunction and stayed the action pending the outcome of the federal appeal.[1]

---

[1]  The Superior Court initially stayed the action before it pending the results of the first federal appeal and later "clarifie[d] that its order staying th[e] [state court] proceeding will remain in place until final resolution" of this appeal.

Just two days later, a panel of this Court decided Tokyo Valentino's appeal. The panel partly vacated the order dismissing Tokyo Valentino's action and remanded the case, explaining the District Court erred in dismissing the entire action as moot.  Tokyo Valentino's damages claim was not mooted when the County's ordinances were repealed, even though its claims for prospective declaratory and injunctive relief were mooted and were rightly dismissed.  But the panel clarified that its opinion did not address whether there might be some other valid ground for dismissing Tokyo Valentino's action.  The panel also held that the District Court abused its discretion when it denied Tokyo Valentino's motion for leave to amend on the "mere possibility" its proposed claims might be unripe.

In November 2016, Tokyo Valentino filed its second amended complaint.  In the new complaint, Tokyo Valentino sought "an order (1) granting preliminary and permanent injunctive relief preventing the County from enforcing certain adult entertainment laws against it, and from threatening to revoke its business license based on perceived violations of those adult [entertainment] laws, (2) declaring that it is a lawful prior nonconforming use under the County's existing ordinances, (3) awarding damages for infringing on its rights, and (4) awarding reasonable attorney's fees and costs."

Once again, the County moved to dismiss.  This time, the County argued Tokyo Valentino lacked standing to bring claims challenging the original

7

ordinances.  The County's standing argument centered on a previously unmentioned provision of the Gwinnett County zoning code that identifies permitted activities within each zoning district.  That provision contains a table of permitted uses that features more than 100 commercial and retail land uses—including "Convenience Store (with or without fuel pumps)," "Department Store," "Discount Department Store, Big-Box Specialty Store or Supercenter," "Dollar or Variety Store," "Recreation and Entertainment Facility (indoor)," "Smoke Shop or Novelty Shop."  Gwinnett Cty., Ga., Unified Dev. Ordinance § 230-100 (2015).  The provision provides "[a]ny use not listed in said table shall be prohibited, except as contained herein" and indicates the County's Zoning Director has the authority to approve unlisted land uses.  Id.  A different part of the zoning code establishes that "[w]henever a conflict of definitions is considered to exist or an interpretation of these definitions is necessary, the Director shall resolve the conflict and interpret the definition."  Id. § 110.20.5.

According to the County, because Section 230-100 did not list "sexual device store" as a permitted land use in the zone in which Tokyo Valentino operated, the land use was presumptively prohibited.  Tokyo Valentino did not challenge the zoning provision, so the County contended it independently barred the sale of sexual devices.  This being the case, the County argued that the District

8

Court could not redress injuries that purportedly stemmed from the original adult entertainment ordinances.

Regarding the replacement ordinances, the County invoked Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971), which held that federal courts should abstain from hearing suits aimed at restraining pending state criminal prosecutions. Id. at 41, 95 S. Ct. at 749. The County contended the District Court should abstain from hearing Tokyo Valentino's challenges because the pending Superior Court action concerned the same subject matter.

The District Court agreed with the County in all regards and granted its motion to dismiss. Relying on Unified Development Ordinance § 230-100, the District Court found Tokyo Valentino's challenges to the original ordinances were not redressable. The District Court reasoned that the zoning provision prohibited the sale of sexual devices and found Tokyo Valentino had not challenged that provision.

Tokyo Valentino argued it was not a sexual device store, but instead a novelty store, which was a permitted land use. The District Court rejected this argument. According to the District Court, Section 230-100 "clear[ly]" defined each land use listed in the table by the "primary type of good or service being sold or marketed." Because "there [was] no doubt that Tokyo Valentino is attempting to, at least in some respect, operate a sexual device store" and "the sale of adult

9

sexual devices is fundamentally distinct from the sale of other novelties," the District Court sided with the County. After offering its own interpretation of the zoning ordinance, the District Court observed:

> Regardless of what the Court thinks, the authority to discern and distinguish between different land uses would seem to rest squarely in the hands of the Zoning Director. In this case, the Director made the decision that selling sexual devices was not covered by any land use listed in the table.

Additionally, the District Court found Tokyo Valentino's complaint did not show it suffered an injury related to the repealed ordinances. Specifically, the District Court declared there was no threat of future harm stemming from the ordinances because they were already repealed, and Tokyo Valentino's second amended complaint had not asserted it suffered any actual harm under the repealed ordinances, dooming its request for damages.

As for claims relating to the current ordinances, the District Court deemed it appropriate to abstain under the Younger doctrine. The Court explained the state-court enforcement proceeding was ongoing at the time Tokyo Valentino filed its second amended complaint, which first asserted claims concerning the new ordinances. Furthermore, in the District Court's view, it had only decided procedural issues regarding the new ordinances while the state court held a substantive proceeding when it considered the County's motion for interlocutory injunction.

10

Tokyo Valentino now appeals, contesting the District Court's dismissal of its second amended complaint.

## II.

Tokyo Valentino first contests the District Court's finding that it lacks standing to bring claims challenging the County's now-repealed adult entertainment ordinances.  To establish Article III standing, a prerequisite to invoking federal jurisdiction, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. __, 136 S. Ct. 1540, 1547 (2016).  "When the defendant challenges standing via a motion to dismiss, 'both . . . trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993) (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975)).  But even at the pleading stage, "a plaintiff must 'clearly allege facts demonstrating each element,' and we evaluate standing on a motion to dismiss based on the facts alleged in the complaint." Aaron Private Clinic Mgmt. LLC v. Berry, 912 F.3d 1330, 1336 (11th Cir. 2019) (internal citation omitted) (quoting Spokeo, 136 S. Ct. at 1547).  This Court

11

reviews a district court's standing determination de novo.  Hollywood Mobile

Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1264 (11th Cir. 2011).

Tokyo Valentino requests two primary types of relief as to the repealed

ordinances: (1) an award of "damages for infringing on its rights," and (2) a

"declar[ation] that it is a lawful prior nonconforming use under the County's

existing ordinances."[2]  Because a plaintiff must establish standing for each type of

relief sought, Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S. Ct. 1142,

1149 (2009), we must separately assess these forms of relief.  As set out below, we

affirm the District Court's dismissal of Tokyo Valentino's request for damages but

reverse the dismissal of its request for declaratory relief.

A.

We first consider Tokyo Valentino's argument that the District Court erred

in finding it lacks standing to bring its claim for compensatory damages relating to

the County's original ordinances.  We agree with the District Court's finding that

Tokyo Valentino's second amended complaint does not contain factual allegations

---

[2] Tokyo Valentino's second amended complaint seeks reasonable attorney's fees and costs.  Similarly, Tokyo Valentino's brief argues the money spent on this litigation constitutes an injury in fact.  But a request for attorney's fees alone is plainly insufficient to establish injury under Article III.  See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480, 110 S. Ct. 1249, 1255 (1990) ("[I]nterest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.").  And the Supreme Court has held that "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the costs of bringing suit."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107, 118 S. Ct. 1003, 1019 (1998).  These alleged injuries fail to satisfy Article III.

that establish it suffered a cognizable injury in fact for which compensatory damages might be warranted.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Spokeo, 136 S. Ct. at 1548 (quotation marks omitted). Tokyo Valentino contends it met this requirement, pointing to several injuries alleged in its second amended complaint. These include: (1) the County adopted the adult entertainment ordinances in "bad faith" in a "thinly-veiled effort[] to thwart or eliminate a business that purveys erotic media and sells sexual devices"; (2) "[i]f the County's efforts continue, Tokyo Valentino will suffer additional costs, lost profits and increased damage to its goodwill"; (3) the County applied its original ordinances in a way that "restrained [Tokyo Valentino] from enjoying benefits of its contractual relationships" and "providing to the adult public [s]exual [d]evices"; and (4) Tokyo Valentino "suffered damages when the County enforced [the now-repealed ordinances] against it." However, none of these alleged injuries suffices to establish Tokyo Valentino's standing to seek damages.

The first alleged injury—the County's past "bad faith" efforts to thwart Tokyo Valentino's business—is wholly abstract. To be cognizable, an injury must be "concrete"; "that is, it must actually exist." Spokeo, 136 S. Ct. at 1548.

13

"[C]laims of injury that are purely abstract . . . do not provide the kind of particular, direct, and concrete injury that is necessary to confer standing to sue in the federal courts." ASARCO Inc. v. Kadish, 490 U.S. 605, 616, 109 S. Ct. 2037, 2045 (1989). Tokyo Valentino's perception that the County acted in bad faith isn't a cognizable Article III injury; it's simply an allegation regarding the County's motives.

Tokyo Valentino's second purported injury concerns its fears that in the future the business "will suffer" harm "[i]f the County's efforts continue." But this alleged injury relates to future or prospective harm, not imminent or actual harm. See Spokeo, 136 S. Ct. at 1548. Because the old ordinances were repealed and replaced, these alleged injuries stemming from those ordinances will never materialize and cannot support Article III standing. Cf. Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006) ("If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing.").

Tokyo Valentino's other claimed injuries—damage to its goodwill and contractual relationships and lost profits resulting from the County's enforcement of its repealed ordinances—are recognized, cognizable harms. See Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004) (mentioning "physical, economic, reputational, contractual, or even aesthetic" harms as cognizable). But

14

Tokyo Valentino's second amended complaint still fails to satisfy the requirements of Article III because it contains no factual allegations even suggesting Tokyo Valentino could have been harmed in the ways it claims. See Aaron Private Clinic Mgmt. LLC, 912 F.3d at 1336. Although Tokyo Valentino's complaint says the company was harmed by the County's enforcement of its ordinances, the complaint does not so much as charge that the County ever enforced the original, now-repealed ordinances against Tokyo Valentino. The complaint mentions "threats" by the County to revoke Tokyo Valentino's business license and to enforce the ordinances. But it is not clear from the complaint how these threats alone might have caused lost profits, impaired contractual relationships, and damaged the company's goodwill.

It is a plaintiff's burden to "allege specific, concrete facts demonstrating that the challenged practices harm[ed] [it]." Warth, 422 U.S. at 508, 95 S. Ct. at 2210. And a plaintiff does not meet this burden by merely outlining in a complaint "'facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements,' since 'we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none.'" Bochese v. Town of Ponce Inlet, 405 F.3d 964, 976 (11th Cir. 2005) (quoting Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n, 226 F.3d 1226, 1229–30 (11th Cir. 2000)); see

15

also, e.g., Kawa Orthodontics, LLP v. U.S. Dep't of the Treas., 773 F.3d 243, 246 (11th Cir. 2014) (concluding plaintiff's "bare allegation that it has lost the value of the time and resources it expended in 2013 sets out an injury that is too abstract and indefinite to confer Article III standing" (quotation marks omitted)).  Because Tokyo Valentino has not alleged facts showing it could have been injured in the ways alleged, we affirm the District Court's dismissal of its claims seeking damages for enforcement of the now-repealed ordinances.

## B.

Apart from its claim for damages, Tokyo Valentino sought a declaration that its sale of sexual devices constitutes a lawful prior nonconforming use that was authorized under the now-repealed adult entertainment ordinances and that the new ordinances' failure to include provisions grandfathering in lawful prior nonconforming uses violates Tokyo's rights under federal and state law.[3]  The

---

[3]  The panel that decided Tokyo Valentino's earlier appeal concluded that the company's request for "prospective" declaratory and injunctive relief was moot because the old ordinances had been repealed.  But we do not believe that determination bars Tokyo Valentino's current claim for retrospective relief.  For one, the law of the case doctrine does not appear to apply.  That doctrine "bars consideration of only those legal issues that were actually, or by necessary implication, decided in the former proceeding."  Oladeinde v. City of Birmingham, 230 F.3d 1275, 1288 (11th Cir. 2000) (emphasis added and quotation marks omitted).  The prior panel's determination that a claim seeking prospective relief was moot does not actually or by implication resolve whether a claim for retrospective relief might present a live controversy.  Beyond that, it seems to us that a request for a declaration of rights under ordinances that are no longer in effect is not moot.  Indeed, this Court has entertained several such challenges in the past.  See, e.g., Crown Media, LLC v. Gwinnett County, 380 F.3d 1317, 1325 (11th Cir. 2004) (concluding that a claim seeking recognition of vested property rights presents a live controversy); see also Chafin v. Chafin, 568 U.S. 165, 172, 133 S. Ct. 1017, 1023 (2013) (emphasizing that the doctrine of mootness is limited to cases where "it is impossible for a court

16

District Court dismissed this claim on standing grounds because it found (1) Tokyo Valentino challenged only a specific subset of the original adult entertainment ordinances, (2) zoning ordinance Section 230-100 was not among the challenged provisions, and (3) Section 230-100 independently barred Tokyo Valentino from selling sexual devices.  As explained below, we think the record was insufficient to support the last of those findings.  Accordingly, we reverse the District Court's dismissal of this claim.

To show redressability, a plaintiff must establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992) (quotation marks omitted).  "Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered."  Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1290 (11th Cir. 2010) (alteration adopted and

---

to grant any effectual relief" and explaining that "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (emphasis added and quotation marks omitted)).

Neither do we think this case implicates Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, 868 F.3d 1248 (11th Cir. 2017) (en banc).  That case held that when a challenged ordinance is repealed during the pendency of an appeal, a request for nominal damages is not alone sufficient to save the case from mootness. Id. at 1264.  Here, the relevant ordinances were not repealed during the pendency of this appeal.  Rather, Tokyo Valentino's second amended complaint plainly requested retrospective relief.  Thus, mootness is not a basis for dismissing Tokyo Valentino's claim.

17

quotation marks omitted).  "[A] party's standing to seek redress is most often determined on the pleadings."  United States v. 1998 BMW "I" Convertible Vin. # WBABJ8324WEM 20855, 235 F.3d 397, 399 (8th Cir. 2000).  But not always. See id.  Even at the motion to dismiss stage, a defendant may bring a "factual attack" on a plaintiff's standing, which "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008).

Although the County relied on a provision of law in seeking to undermine Tokyo Valentino's claim to standing, its challenge was at bottom a factual one. The County argued Tokyo Valentino could not call its planned sexual device store a "Novelty Shop" or any of the more than 100 permitted land uses.  Instead, according to the County, the zoning ordinance would only recognize Tokyo Valentino's operation as an unpermitted "sexual device store."

We think the District Court too easily revolved this question in the County's favor.  The Unified Development Ordinance provides that terms should be defined based on (in order of preference): (1) definitions provided within the Ordinance, (2) the most recent edition of The Illustrated Book of Development Definitions (Rutgers); and (3) "common and ordinary use."  Gwinnett County, Ga., Unified Dev. Ordinance §§ 110-20.1, 110-20.2, 110-20.4.  But "[w]henever a conflict of

18

definitions is considered to exist or an interpretation of these definitions is necessary, the Director shall resolve the conflict and interpret the definition." Id. § 110-20.5 (emphasis added). Thus, as the District Court recognized, "the authority to discern and distinguish between different land uses would seem to rest squarely in the hands of the Zoning Director."

The District Court dismissed Tokyo Valentino's argument that it was a "Novelty Shop." By implication, it also dismissed the complaint's allegation that Tokyo Valentino's planned land use was a lawful prior nonconforming use. But this ruling was not based on any definition featured in the Ordinance. Rather, the District Court ruled without reference to any record evidence showing how these terms are defined; any affidavit establishing how the Zoning Director has interpreted them; or a supportable explanation for why a common or ordinary definition of "Novelty Shop" necessarily excludes sexual devices. The District Court commented that "[t]he sale of adult sexual devices is fundamentally distinct from the sale of other novelties, as can be seen by the fact that it was the only line of business the County said required an additional permit." But the County's ordinances, as originally enacted, did not bar sexual devices or require additional permitting in order to sell them. In fact, the County explicitly acknowledged before this Court that "Tokyo[] [Valentino's] premise—that the original adult codes did not specifically mention sexual devices—is correct." It seems the

19

District Court accepted the County's litigation position as stating the views of the Zoning Director on the interpretation of "Novelty Shop," despite a lack of record evidence or other clear basis for doing so.

The County is right to say that some cases from our Circuit have concluded that a plaintiff's claims were not redressable because a different, unchallenged provision precluded relief.  See, e.g., Maverick Media Grp. v. Hillsborough County, 528 F.3d 817, 821 (11th Cir. 2008) (per curiam); KH Outdoor, L.L.C. v. Clay County, 482 F.3d 1299, 1301, 1303–04 (11th Cir. 2007).  But those cases are different in at least two ways.  First, those cases addressed unchallenged provisions that inarguably precluded a plaintiff's relief.  For example, in Maverick Media Grp., record exhibits revealed that the plaintiff sought permits for signs measuring 14' x 48', a "size of which clearly exceeds the size limitations" contained in other ordinances.  528 F.3d at 821.  That case featured no genuine factual dispute about whether the unchallenged ordinance actually precluded the plaintiff's relief.  The record—not merely one party's representations—established actual preclusion.

Likewise, in KH Outdoor, this Court explained that "the uncontroverted evidence" showed the plaintiff had not complied with the other, unchallenged provisions that precluded relief.  482 F.3d at 1304.  This is not what we have here. The District Court based its finding on little more than its sense that "Novelty

20

Shop" would not include a store selling sexual devices and the County's unsupported contention that the Zoning Director had also come to that conclusion.

Second, the cases relied on by the County came to us in a different posture. They came to this Court after discovery and the filing of motions for summary judgment.  See Maverick Media Grp., 528 F.3d at 819; KH Outdoor, L.L.C., 482 F.3d at 1302, 1304.  As the Supreme Court has explained, a plaintiff must offer more to support its standing at each successive stage of the litigation.  Lujan, 504 U.S. at 561, 112 S. Ct. at 2136.  A more demanding approach is appropriate at the summary judgment stage, but it is not warranted before discovery at the motion to dismiss stage.  Cf. Id. at 561, 112 S. Ct. at 2137 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . .").  To the extent the County's representations led the District Court to question its jurisdiction, the District Court should have conducted further proceedings, rather than dismissing the complaint on little more than the County's bare assertions.  See Bischoff v. Osceola County, 222 F.3d 874, 875 (11th Cir. 2000) (holding a district court erred by resolving "central factual disputes and ma[king] witness credibility choices on issues material to standing just by relying on its reading of warring affidavits").  We conclude the District Court improperly dismissed Tokyo Valentino's claims requesting declaratory relief as to its status as

21

a lawful prior nonconforming use and the new ordinances' failure to include provisions to grandfather in prior lawful nonconforming uses.

### III.

Tokyo Valentino also contests the District Court's decision to abstain under the doctrine established in Younger v. Harris from considering claims challenging the County's current adult entertainment ordinances.  We hold that Younger abstention was improper and reverse on that ground as well.

This Court reviews a district court's decision to abstain for abuse of discretion.  See Hughes v. Att'y Gen. of Fla., 377 F.3d 1258, 1262 (11th Cir. 2004).  But, in reviewing an abstention decision, we must be mindful that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976).  In fact, "federal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."  Deakins v. Monaghan, 484 U.S. 193, 203, 108 S. Ct. 523, 530 (1988) (quotation marks omitted); see also Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72, 134 S. Ct. 584, 588 (2013) ("In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction.").  Thus, even with the deferential standard of review, "[o]nly the clearest of justifications merits

22

abstention."  Jackson-Platts v. Gen. Elec. Capital Corp., 727 F.3d 1127, 1140 (11th

Cir. 2013) (quotation marks omitted); see also Niagara Mohawk Power Corp. v.

Hudson River-Black River Regulating Dist., 673 F.3d 84, 99 (2d Cir. 2012)

("Abuse of discretion is normally a deferential standard, but in the abstention

context our review is somewhat rigorous. . . .  In abstention cases, . . . the district

court's discretion must be exercised within the narrow and specific limits

prescribed by the particular abstention doctrine involved." (quotation marks

omitted)).  Where the requirements for Younger abstention are not met, "federal

courts must normally fulfill their duty to adjudicate federal questions properly

brought before them."  Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 238, 104 S. Ct.

2321, 2328 (1984) (emphasis added); see also New Orleans Pub Serv., Inc. v.

Council of New Orleans, 491 U.S. 350, 358–59, 109 S. Ct. 2506, 2513 (1989)

(noting "federal courts lack the authority to abstain from the exercise of

jurisdiction that has been conferred" except with respect to the "carefully defined"

areas in which "abstention is permissible" (quotation marks omitted)).

The Younger doctrine "requires a federal court to abstain where a plaintiff's

federal claims could be adjudicated in a pending state judicial proceeding."

Deakins, 484 U.S. at 202, 108 S. Ct. at 529.  This doctrine rests on notions of

federalism and comity and the desire to avoid duplicative proceedings.  See

Younger, 401 U.S. at 43–45, 91 S. Ct. at 750–71.  But the Supreme Court and this

23

Court have recognized that "'Our Federalism' 'does not mean blind deference to States' Rights,' but instead a 'system in which there is sensitivity to the legitimate interests of both State and National Governments.'" For Your Eyes Alone, Inc. v. City of Columbus, 281 F.3d 1209, 1217 (11th Cir. 2002) (quoting Younger, 401 U.S. at 44, 91 S. Ct. at 750). For that reason, even when a federal case implicates important state interests, "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States." Sprint Commc'ns, Inc., 571 U.S. at 73, 134 S. Ct. at 589 (alteration adopted and quotation marks omitted).

Younger abstention applies only in three "exceptional circumstances": (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 78, 134 S. Ct. at 591 (alteration adopted and quotation marks omitted); see also Huffman v. Pursue, Ltd., 420 U.S. 592, 604, 95 S. Ct. 1200, 1208 (1975) (holding that Younger abstention is warranted when a civil enforcement action that is "akin to a criminal prosecution" is pending in state court). When one of those circumstances exists, a court must consider the conditions set out in Middlesex County Ethics Committee v. Garden State Bar Ass'n ("Middlesex"), 457 U.S. 423, 102 S. Ct. 2515 (1982), to determine whether abstention was warranted. The three

24

Middlesex factors are whether: (1) there is an "ongoing" state-court proceeding at the time of the federal action; (2) the state proceeding implicates an important state interest; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims. Id. at 432, 102 S. Ct. at 2521; see For Your Eyes Alone, Inc., 281 F.3d at 1217.

Here, neither party disputes that the state-court proceeding pending in Gwinnett County Superior Court constitutes the sort of civil enforcement proceeding for which Younger abstention may be warranted. Likewise, neither party contests that the Superior Court proceedings implicate important state interests or that Tokyo Valentino would have an adequate opportunity to raise its federal claims in those proceedings. Thus, we need only decide whether the state-court proceeding was "ongoing" at the time of the federal action.

Under this Court's precedent, a state proceeding is considered "ongoing" for Younger purposes in two circumstances. First, a state proceeding is "ongoing" if it was pending at the time the federal suit was filed. See Jones v. Wade, 479 F.2d 1176, 1181 n.6 (5th Cir. 1973) ("The only relevant inquiry is whether state prosecution was pending at the time Jones brought suit in federal court.").[4] Second, even if a state proceeding began after the filing of a federal suit, the state

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

25

proceeding is still "ongoing" if "the state [proceeding] commenced before any proceedings of substance on the merits have taken place in the federal court." For Your Eyes Alone, Inc., 281 F.3d at 1217 (quotation marks omitted).  In other words, this second circumstance permits a federal court to abstain under Younger if "the federal litigation is in an embryonic stage and no contested matter has been decided." Id. (alterations adopted and quotation marks omitted).[5]  We address each of these circumstances.  In contrast with our dissenting colleague, we conclude the state court proceedings were not ongoing when Tokyo Valentino's federal action was filed.

## A.

We first consider whether the state court action was pending when the federal action was filed.  Tokyo Valentino explains that it filed its lawsuit in July 2015 and the County did not file its state court enforcement action until nearly a year later.  It says the federal action therefore started long before the state court

---

[5] The dissenting opinion insists we must perform separate assessments for, on the one hand, whether there were proceedings of substance on the merits in federal court and, on the other, whether the federal litigation progressed beyond the embryonic stage. See Dissent at 8–9. Contrary to the dissenting opinion's assertion, the Supreme Court, this Court, and our sister circuits do not treat these as distinct inquiries. Instead, courts hold that a federal case has necessarily proceeded beyond the "embryonic stage" when there have been "proceedings of substance on the merits." See, e.g., Midkiff, 467 U.S. at 237–38, 104 S. Ct. at 2328 (using interchangeably "proceedings of substance on the merits" and "proceeded well beyond the 'embryonic stage'"); Nationwide Biweekly Admin., Inc. v. Owen ("Nationwide"), 873 F.3d 716, 728 (9th Cir. 2017) (observing that the "embryonic stage" inquiry is "another way" of asking whether "proceedings of substance on the merits have taken place in the federal court"); For Your Eyes Alone, Inc., 281 F.3d at 1217–18.

action.  The County (and the dissenting opinion) disagree.  The County argues the appropriate reference point for determining which action started first is the moment Tokyo Valentino filed its second amended complaint raising for the first time its challenges to the new ordinances.  The County says Younger abstention was appropriate because Tokyo Valentino filed its second amended complaint about four months after the County initiated the state-court enforcement action.

Supreme Court precedent suggests that for abstention purposes we look to events occurring from the time a federal action is first filed.  See Town of Lockport v. Citizens for Cmty. Action at the Local Level, Inc., 430 U.S. 259, 264 n.8, 97 S. Ct. 1047, 1051 n.8 (1977) (concluding abstention was not necessary where the "original action" in federal court was brought "well before" the state action was filed); see also M&A Gabaee v. Cmty. Redevelopment Agency L.A., 419 F.3d 1036, 1040 (9th Cir. 2005) ("It is self-evident that, absent some unusual use of language, a lawsuit begins when it is filed."); 17B Charles Alan Wright, Arthur R. Miller et al., Federal Practice and Procedure § 4253 (3d ed.) (Westlaw database updated Aug. 2019) (stating Younger "applie[s] only if there was a prosecution pending in state courts at the time the federal proceeding was begun").  And Eleventh Circuit caselaw does not look squarely to the moment a federal complaint was filed.  Instead, precedent tells us to look to the start and progression of the

27

federal litigation as compared to the start and progression of the state litigation. See For Your Eyes Alone, Inc., 281 F.3d at 1217.

A decision of the Sixth Circuit details why this is so. Hill v. Snyder, 878 F.3d 193 (6th Cir. 2017), concerned a class action challenge to Michigan's juvenile sentencing scheme brought by prisoners who received mandatory sentences of life without parole for crimes they committed while under the age of eighteen. Id. at 199. The case was first filed in November 2010. Id. While the action was pending in federal district court, the Supreme Court issued Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455 (2012), which held that the Eighth Amendment prohibits mandatory sentences of life without parole for those under the age of eighteen at the time of their crimes. Id. at 489, 132 S. Ct. at 2475.

After Miller was decided, Michigan amended its sentencing scheme to create a mechanism for resentencing juvenile offenders whose sentences were imposed before Miller. Hill, 878 F.3d at 200. The federal plaintiffs in Hill then filed a second amended complaint, adding claims challenging Michigan's new sentencing scheme. See id. at 200–01. But the defendants argued, and the district court agreed, that the federal courts were required to abstain under Younger from entertaining challenges to the new sentencing scheme because some of the plaintiffs' criminal cases had been reopened for resentencing before the new claims were brought in federal court. See id. at 201, 206. The Sixth Circuit was

28

presented with the question of whether "the filing of the [second amended complaint], seven years into the litigation, require[d] the federal court system to reevaluate whether to exercise its jurisdiction." Id. at 205.

The Sixth Circuit explained that the addition of new claims does not require federal courts to reevaluate, years into litigation, whether to abstain under Younger. Id. The court observed that "Younger is inextricably bound up with beginnings." Id. For that reason, "[c]ourts look to the moment the federal lawsuit was filed to determine whether it should be allowed out of the starting gate." Id. The court pointed to a series of cases that illustrate "Younger abstention issues tend to arise at or near the outset of federal proceedings." Id.; see id. (cataloging cases in which district courts dismissed lawsuits under Younger within six months of the time suit was first filed). To do otherwise, the Sixth Circuit said, would "muddle what is now a practical and common-sense doctrine." Id.

Applying this principle, Tokyo Valentino clearly filed its federal suit before the County initiated its state action. Tokyo Valentino filed this federal action on July 22, 2015, and first moved to amend its complaint to add claims relating to the current ordinances on December 17, 2015. The County did not file the state-court enforcement action until July 8, 2016—nearly a year after Tokyo Valentino filed its action. At the time the County initiated the state-court enforcement action, Tokyo Valentino's appeal concerning its motion to amend was still pending before

29

this Court.  Neither the Supreme Court's precedent nor ours tells us that the door to Younger is reopened when a plaintiff—many months after a case has been filed— amends its complaint to bring additional claims related to the same controversy. And there is nothing about that circumstance that might merit abstention.  See Hill, 878 F.3d at 205–07; Cf. Sprint Commc'ns, Inc., 571 U.S. at 72–73, 134 S. Ct. at 588.[6]

Concluding otherwise would sanction the "reverse removal power" this Court has counseled against.  See For Your Eyes Alone, Inc., 281 F.3d at 1219 (emphasis omitted) (noting that this Court must "remain circumspect" about "giv[ing] state officials expansive leeway to override a plaintiff's choice of whether to litigate in a federal or state forum"); see also Hill 878 F.3d at 205 (noting plaintiffs might "risk sacrificing federal claims for fear of a late-stage Younger analysis").  That is, the County would be permitted to remove claims to state court nearly a year after this case was filed and after Tokyo Valentino "had

---

[6] The County argues that under our decision in Redner v. Citrus County, 919 F.2d 646, 649–51 (11th Cir. 1990), the District Court was free to abstain from some claims and not others. Picking up on this thread, the dissenting opinion says Redner and Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S. Ct. 2561 (1975), show that district courts must make abstention decisions on a claim-by-claim basis.  See Dissent at 11–12.  Based on this reasoning, the dissenting opinion says the District Court did not err in separately considering whether to abstain from entertaining claims regarding the new ordinance.  See id.  However, the dissenting opinion would treat claims added in the midst of litigation the same as claims asserted at the start of litigation.  As the Sixth Circuit explained in Hill, this is not the case.  See 878 F.3d at 205–07.  When federal litigation is beyond its embryonic stage, the addition of new claims is not controlled by Younger abstention, but by the Federal Rules of Civil Procedure.  See id. at 206.

30

invested precious time and resources [in] bringing the federal litigation." For Your Eyes Alone, Inc., 281 F.3d at 1219; Hill, 878 F.3d at 205 (noting that permitting abstention in the middle of litigation "would allow subsequent unforeseen prosecutions to cut the legs out from under long-running federal litigation"). Such permission would "vest[] the [County]—not the aggrieved citizen—with the power to choose the forum, and, indeed, the nature of the proceeding in which the federal constitutional claim will be litigated." For Your Eyes Alone, Inc., 281 F.3d at 1219 (alteration adopted and quotation marks omitted).

Beyond that, applying the Younger doctrine here would effectively penalize Tokyo Valentino for the District Court's initial abuse of discretion. Had the District Court granted Tokyo Valentino's request to add claims about the new ordinances shortly after they were enacted, there would be no dispute about the fact that Tokyo Valentino's action preceded any state court proceedings. Cf. Hill, 878 F.3d at 207 ("Plaintiffs should not be punished because the novel position they championed in 2010 was subsequently given a voice by the Supreme Court, a development that necessitated updates to the complaint in 2016."). Tokyo Valentino should not have to forgo its choice of forum because of the District Court's error.[7]

---

[7] The dissenting opinion says the District Court's improper denial of Tokyo Valentino's motion to amend does not "justify holding that the district court abused its discretion when it abstained." Dissent at 5. But our holding does not turn on the District Court's earlier mistake.

31

The dissenting opinion says Tokyo Valentino "invite[d] a state court enforcement action" by "voluntarily . . . violat[ing] the new adult code."  Dissent at 6.  Similarly, the dissent notes that the County had an interest in enforcing its new ordinances.  Id. at 7–8.  According to the dissenting opinion, Tokyo Valentino could have either awaited the outcome of its appeal or filed a new federal lawsuit challenging the new ordinances instead of violating the new ordinances.  Id. at 6.  But this overlooks that Tokyo Valentino was already operating its business when the new code was enacted.  Just as the County had an interest in enforcing its ordinances, Tokyo Valentino had an interest in seeking a federal court's input on whether the new ordinances were a lawful restriction on its existing business.  To that end, Tokyo Valentino sought to bring claims challenging the new ordinances.  Tokyo Valentino had no way of stopping the County from filing its state court action while the federal appeal was pending.  It was the County's actions, not Tokyo Valentino's, that disturbed Tokyo Valentino's opportunity to secure a federal forum.

In sum, the District Court erred in concluding that the state court enforcement action preceded Tokyo's federal court action against the new ordinances.

Instead, it turns on the progress of the federal litigation at the time the state court enforcement action began.

32

B.

The District Court also abstained on the alternative basis that no significant progress had been made in the federal action. The District Court said it had not yet reached any "proceedings of substance on the merits" of the case but had only ruled on procedural matters. We must determine whether the federal litigation moved beyond the "embryonic stage" before the state court action began. Doran, 422 U.S. at 929, 95 S. Ct. at 2566.

The Supreme Court has given us some parameters to decide "what proceedings are 'substantial' and 'on the merits' for Younger purposes." Nationwide, 873 F.3d at 728. For instance, if the "sole issue" addressed by the district court is whether to abstain, those proceedings do not count as proceedings of substance on the merits. Middlesex, 457 U.S. at 437, 102 S. Ct. at 2524. Also, "the grant of a preliminary injunction is always a proceeding of substance on the merits." Nationwide, 873 F.3d at 728 (citing Midkiff, 467 U.S. at 238, 104 S. Ct. at 2328). And, without more, the denial of a temporary restraining order is not a proceeding of substance on the merits. See id. (citing Hicks, 422 U.S. at 337, 349, 95 S. Ct. at 2286, 2292). But this Court has found abstention improper where a district court denied a motion for a temporary restraining order after a thorough evidentiary hearing on the motion and the submission of several pleadings by the parties. For Your Eyes Alone, Inc., 281 F.3d at 1218. In most instances, courts

33

"must conduct a fact-specific assessment of the circumstances in individual cases."

Nationwide, 873 F.3d at 728; see For Your Eyes Alone, Inc., 281 F.3d at 1218

(describing the case-specific circumstances that made abstention improper).

In assessing whether abstention was proper, courts look to "the time that the

district court has spent considering the case, any motions ruled on, any discovery,

the number of conferences [or hearings] held, and any change in the parties'

position as a result of the federal litigation." Nationwide, 873 F.3d at 728–29; see

also For Your Eyes Alone, Inc., 281 F.3d at 1218; Ciotti v. Cook County, 712 F.2d

312, 314 (7th Cir. 1983) ("Apart from the lower court's decision on standing, the

record indicates no other proceedings—for instance, depositions taken, discovery

completed, or briefs filed on the issues—that would suggest advancement toward a

determination on the merits."). Courts also consider the filing of motions, even if

the district court did not rule on the motions. See, e.g., For Your Eyes Alone, Inc.,

281 F.3d at 1218 (finding abstention improper where the parties had filed a

complaint, a motion to dismiss, an answer, and a motion for summary judgment

and the district court held an evidentiary hearing on and denied a motion for a

temporary restraining order). Consistent with these considerations, this Court's

precedent establishes that "significant and substantial procedural steps" may move

a case past its embryonic stage. See Costello v. Wainwright, 525 F.2d 1239, 1246

(5th Cir. 1976) ("There is nothing in the Younger series of cases that requires a

34

federal court to abstain . . . merely because the litigants have raised a somewhat similar issue in state civil litigation long after the federal court has taken jurisdiction and has taken significant and substantial procedural steps."), vacated in part on other grounds en banc, 539 F.2d 547 (5th Cir. 1976), rev'd, 430 U.S. 325, 97 S. Ct. 1191 (1977), on remand en banc, 553 F.2d 506 (5th Cir. 1977) (per curiam) (reinstating the original panel decision); see also See For Your Eyes Alone, Inc., 281 F.3d at 1218.

Before the County initiated the state court proceeding in this case, the following significant events took place in District Court: the parties agreed to and the District Court entered a consent temporary restraining order; the County answered Tokyo's first amended complaint; and the County filed a motion to dismiss that Tokyo Valentino responded to and the District Court ruled on.  In addition, both parties filed their initial disclosures.  Also, Tokyo Valentino had already filed a notice of appeal and its opening brief for the first appeal before this Court.  This activity no doubt constitutes "significant and substantial procedural steps" and takes this litigation past the embryonic stage.  Because the federal action passed this threshold before the state enforcement proceeding began—and would have progressed even further had the District Court not abused its discretion in refusing Tokyo Valentino leave to file its second amended complaint when it requested to do so—Younger abstention was not warranted.  We conclude the

35

District Court improperly dismissed Tokyo Valentino's claims and reverse and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

JULIE CARNES, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's disposition of claims concerning the now-repealed code. However, I respectfully dissent from that part of the majority opinion concluding that the district court abused its discretion when it abstained from adjudicating Plaintiff's challenge to Gwinnett County's ["the County"] new adult entertainment ordinance. And based on controlling law, as well as the admittedly convoluted facts of the case, I cannot conclude that the district court abused its discretion when it determined that abstention was appropriate.

Specifically, because it concluded that a state-court enforcement action to enforce Plaintiff's compliance with a newly enacted code was ongoing at the time Plaintiff's federal complaint was amended to challenge this new code, the district court abstained from hearing Plaintiff's challenge to that new code. As caselaw provides, if the district court was right when it said that the state-court enforcement proceeding was ongoing, the district court necessarily acted within its discretion in thereby abstaining. The majority holds that the district court was wrong to find that this state enforcement action was ongoing. The majority's pronouncement to the contrary, though, it is clear that the state enforcement action was ongoing when Plaintiff's complaint was amended to include a challenge to the new code. That is, Plaintiff's claims challenging the new code were filed in the federal action after

37

Defendant had filed the state enforcement action asserting that Plaintiff was in violation of the new code; after the state court had conducted an evidentiary hearing in which it considered the merits of the County's action and Plaintiff's defenses to enforcement of the new code; after the state court, based on its substantive examination, had denied the County's request for temporary injunctive relief; and before the state court had yet issued its final decision.  In contrast, the district court had taken no substantive action with respect to the new-code claims (or even the old-code claims) at the time it abstained, yet the majority nonetheless finds that the door to *Younger*[1] abstention had already closed.

The majority's holding hinges on what I believe to be an incorrect notion that the existence of any procedural activity in the federal action concerning the old-code claims barred the district court from abstaining on new claims that challenge the entirely-revamped new code and raise constitutional challenges not previously at issue.  Yet, as I read our and Supreme Court authority, none of this caselaw indicates that the district court's abstention from hearing the new-code claims constitutes an abuse of discretion under these circumstances.

The majority purports to adhere to that authority, but ultimately fails to answer what the caselaw holds to be the dispositive question, which is:  whether the district court had conducted "proceedings of substance on the merits" with

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

38

respect to the new-code claims. Instead, the majority merely defaults to a conclusion that because the routine procedural events that typically occur at the outset of most civil litigation occurred here with the regard to the old-code challenges, this means that the federal litigation had proceeded beyond the "embryonic stage" as to that old-claim litigation, thereby precluding abstention on a later challenge to an entirely new code. Because binding authority requires abstention to be considered on a claim-by-claim basis and because the district court had not conducted "proceedings of substance on the merits" of any claim, much less the new-code claims, I conclude that the district court did not abuse its discretion in abstaining on those claims.

I.    **The State Enforcement Action was "Ongoing" Because Plaintiff's New-Code Claims Were Filed After the State Action Commenced and No Proceedings of Substance on the Merits Occurred Before the District Court Abstained**

As noted, we apply an abuse of discretion standard to a district court's decision to abstain and, in doing so, we look to "the circumstances with which [the court] was presented when it abstained." *Redner v. Citrus Cty.*, 919 F.2d 646, 649 n.5 (11th Cir. 1990). Whenever applying an abuse of discretion standard, we may reverse only if the district court made a clear error of judgment or applied the wrong legal standard. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). Applying that standard, I conclude that the district court did not

39

clearly err or apply the wrong legal standard in holding that the state enforcement action was "ongoing" regarding the new claims.

The Supreme Court has identified two scenarios justifying abstention even if a state court action was filed after the federal action commenced. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928–29 (1975). "[F]ederal courts are to abstain if the state [action] commenced 'before any proceedings of substance on the merits have taken place in the federal court,' *Hicks*, 422 U.S. at 349, 95 S.Ct. at 2292, **or** if 'the federal litigation [is] in an embryonic stage and no contested matter [has] been decided,' *Doran*, 422 U.S. at 929, 95 S.Ct. at 2566." *For Your Eyes Alone*, *Inc. v. City of Columbus*, 281 F.3d 1209, 1217 (11th Cir. 2002) (emphasis added). Abstention was permitted here under either scenario.

First, Plaintiff's new-code claims were not filed in this action until after the state enforcement action began. As the district court observed before the filing of the Second Amended Complaint adding claims challenging the new code, "the entire case before [the district court] was about the old regulations." The district court correctly reasoned that the state court action was "ongoing" because "[t]he new regulations created an entirely new set of claims that the Court has not addressed in any way until now. In effect, [Plaintiff's] claims with regard to the

40

new regulations are a completely different case than its claims with regard to the old regulations."[2]

Moreover, *Younger* abstention is appropriately determined on a claim-by-claim basis, not on "an all-or-nothing" basis, as Plaintiff argues and the majority apparently accepts in lumping Plaintiff's new-code claims in with its previously dismissed old-code claims.  For example, *Doran* and *Redner* each directed abstention for only a portion of the claims brought before the district court, even though the claims were, in the words of the majority here, "related to the same controversy."  *Doran*, 422 U.S. at 929–30 (requiring abstention for claims brought by one of three adult establishment owners even though all were subjected to the same topless dancing ordinance and the same constitutional challenges would be decided in federal and state court); *Redner*, 919 F.2d at 649–50 (affirming district court's abstention from deciding the constitutionality of adult entertainment Ordinance 88-05, at issue in state court, but reversing on abstention of its successor Ordinance 88-06, which was not considered in state court, even though the

---

[2]  Unlike the old code, the new code made explicit reference to stores selling sex toys, expressly drawing them into the ambit of the County's "adult establishment" licensing and zoning scheme. The new adult licensing code specifically defined what constitutes a "sexual device" and defined "sex paraphernalia store" as a "commercial establishment where more than 100 sexual devices are regularly made available for sale or rental."  While Plaintiff contends its selling activity was lawful under the original code because its business did not fall within the definition of an "adult entertainment establishment," it acknowledges that the new code bars its activities absent a finding that its prior activity conformed with the old code or that the new code is unconstitutional.

ordinances were extremely similar).  Thus, Plaintiff's filing of "related" claims in an already pending federal action does not foreclose *Younger* abstention.

Second, as to litigation activity that occurred before the County initiated the state action to enforce the new code, the majority suggests that proceedings of substance occurred merely by virtue of the district court's entry of a consent TRO at the beginning of the old-code litigation, the County's filing of an answer to the complaint in that old-code litigation, the parties' exchange of initial disclosures in the old-code litigation, the court's dismissal of Plaintiff's old-code claims as moot upon the enactment of a new code that governed adult entertainment establishments and supplanted the old code, and the district court's denial and Plaintiff's appeal of its motion to amend.  I disagree with that characterization.

None of the above-described litigation activity cited by the majority constitutes proceedings of substance on the merits of any of Plaintiff's claims, much less the new-code claims at issue here.  As reflected in numerous cases evaluating the progress of federal actions for *Younger* abstention purposes, "proceedings of substance on the merits" refers to whether the district court has substantively considered or began adjudicating issues that overlap with a pending state court proceeding.  Thus, the issuance of a preliminary injunction by the federal court has been found to meet this standard, as has the court's holding of a thorough evidentiary hearing, followed by a ruling on a temporary restraining

42

order.  *See Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) ("Whether issuance of [a] temporary restraining order was a substantial federal court action or not, issuance of [a] preliminary injunction certainly was."); *For Your Eyes Alone*, 281 F.3d at 1218–19 (*Younger* abstention foreclosed when district court had already conducted a thorough evidentiary hearing and ruled on a motion for a temporary restraining order).  Likewise, even if the federal court has not issued a substantive ruling, but the court or parties have taken substantial steps in anticipation of that ruling, the court may find a later-filed state proceeding not "ongoing" and decline to abstain on *Younger* grounds.  *Costello v. Wainwright*, 525 F.2d 1239, 1246 (5th Cir. 1976), *vacated in par*t *on other grounds*, 539 F.2d 547 (5th Cir. 1976) (en banc), *rev'd*, 430 U.S. 325, *on remand*, 553 F.2d 506 (5th Cir. 1977) (en banc) (reinstating the original panel decision) (denial of abstention affirmed where federal court had appointed a special master and special master had conducted a 20-month study and prepared a report before the state action was filed).

None of the litigation activity cited by the majority in this case involved proceedings of substance on the merits.  The district court did not conduct an evidentiary hearing or otherwise evaluate the merits of Plaintiff's claims.  *For Your Eyes Alone*, 281 F.3d at 1218–19 (identifying "lack of any hearings" in *Hicks* and *Doran* and the district court's "thorough evidentiary hearing" as a key

43

distinguisher); *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 728 (9th Cir. 2017) (stating "the relevant inquiry, in examining the history of the case, is the extent of the district court's involvement in the merits"). There is no analysis of the merits of Plaintiff's claims in the district court's order adopting the parties' proposed consent TRO. *Compare Nationwide Biweekly Admin.*, 873 F.3d at 728 (identifying specific pages in which the district court addressed the merits in ruling on defense motions). Likewise, the district court's one-paragraph order granting Defendant's motion to dismiss for mootness and denying Plaintiff's motion to amend its complaint on ripeness grounds does not constitute a proceeding on the merits; nor does Plaintiff's appeal of that procedural ruling. *Id*. at 729; *Forty One News, Inc. v. Cty. of Lake*, 491 F.3d 662, 666–67 (7th Cir. 2007) ("Like a finding about standing . . . or a ruling on a motion to dismiss for failure to state a claim . . . the preliminary matters addressed here [in defendant's motions to dismiss for *res judicata*] were not sufficiently related to the merits to satisfy the standard in *Hicks*."). Finally, the filing of an answer and the serving of initial disclosures are preliminary matters that do not involve the court in the merits of Plaintiff's claim.

In short, the district court correctly reasoned that "the threshold between substantive and non-substantive proceedings is whether the federal case has moved beyond matters of mere procedure to matters that are key to the eventual outcome of the case." Here, at the time the district court abstained, it had not substantively

44

evaluated any claim, much less the claims subject to abstention in view of the state court enforcement action.  At the time the district court abstained, only the state court had invested time and energy in conducting proceedings of substance on the merits of Plaintiff's claims.  I am at a loss in understanding how one could assert that the district court made a clear error of judgment or applied the wrong legal standard when it determined that the procedural matters preceding abstention failed to rise to the level of "proceedings of substance on the merits," as controlling authority has interpreted that phrase.

## II.    The Majority Misconstrues and Misapplies Controlling Authority

Despite *Hicks*' clear directive to consider whether "proceedings of substance on the merits have taken place in the federal court," the majority limits its inquiry to only the question "whether the federal litigation moved beyond the 'embryonic stage' before the state court action began."  Majority Op. at 33.  The majority cites *Doran* in support of the above statement, but *Doran* held only that federal litigation "in an embryonic stage," with "no contested matter" decided, is "<u>squarely</u> governed by *Younger*."  Doran, 422 U.S. at 929 (emphasis added).  That is, in such a circumstance, the district court should abstain.  Thus, *Doran* reflects the strongest case for abstention in view of a later-filed state court action.  It does not hold that the fact that federal litigation may have proceeded beyond an "embryonic" stage procedurally means that the federal court can forgo a determination whether

45

proceedings of substance on the merits have occurred before it.  Indeed, *Doran* does not cite the *Hicks* standard, much less define the outer limits of what constitutes "proceedings of substance on the merits" or otherwise preclude *Younger* abstention when procedural matters could be argued to have moved the litigation beyond the embryonic stage.  It is not enough to say, as the majority does here, that procedural matters have taken the federal litigation beyond the embryonic stage without then next evaluating whether abstention would nevertheless still be permitted because no "proceedings of substance on the merits" have taken place in that same litigation.  *Hicks*, 422 U.S. at 349.[3]

Building on that error, the majority relies on *Costello v. Wainwright*, 525 F.2d 1239, 1246 (5th Cir. 1976) for the proposition that "'significant and substantial procedural steps' may move a case past its embryonic stage" and thereby foreclose *Younger* abstention in this case.  Majority Op. at 34.  In *Costello,* a class action suit on behalf of all Florida prisoners, we rejected appellant's contention that the district court should have abstained from ruling on an application for preliminary injunction three years after suit was filed.  *Id.*  During

---

[3]  The majority mischaracterizes my position as advocating the performance of "separate assessments for, on the one hand, whether there were proceedings of substance on the merits in federal court and, on the other, whether the federal litigation progressed beyond the embryonic stage."  Majority Op. at 26 n.5.  My position is that the majority's "embryonic stage" analysis is incomplete because it focuses on the mere passage of time in a case with minimal procedural developments and fails to answer the pertinent question:  whether proceedings of substance on the merits have occurred.

46

those three years, the district court had twice rejected plaintiff's' application for a preliminary injunction to alleviate severe prison over-crowding. *Id.* at 1241. Nevertheless, the district court had appointed an expert special master to conduct a "comprehensive health services survey of all correctional institutions" operated by the Florida Division of Corrections and to report on needed remedial measures. *Id.* That comprehensive report was completed, or nearly so, when the state proceeding was filed twenty months after the district court appointed the special master.[4] Importantly, the court's ruling on the third preliminary injunction motion that it ultimately granted in the plaintiffs' favor was intended to be, and was, premised on the contents of this report.

The defendants, however, argued on appeal that because a state action involving related issues had been filed after denial of the second preliminary injunction request and before the district court's issuance of its ultimate ruling on plaintiffs' final request for injunctive relief, the district court should have abstained. Defendants' primary argument was a technical argument: that the district court had "effectively divested itself of further jurisdiction" on the issues before it because it had failed "to state expressly that it was retaining jurisdiction

---

[4] The court appointed the special master "soon" after it rejected plaintiffs' renewed application for a preliminary injunction one month after denying plaintiffs original application on February 8, 1973. *Id.* The state mandamus action was filed in December 1974. *Id.* at 1245. The opinion does not expressly indicate when the special master submitted his report. However, the parties entered into a pre-trial stipulation that referenced the special master's report ("the Babcock Commission Report") in January 1975. *Id.* at 1241, 1244–451.

of the issues in the case when it denied the renewed [second] application for preliminary injunction." *Id*. at 1245. Our court made short work of that argument, noting that by appointing a special master to conduct an intensive study of plaintiffs' claim, the district court clearly expressed its intention to retain jurisdiction over all aspects of the case and to ultimately rule on plaintiffs' request for relief. *Id*. at 1245–46.

In contrast to the facts in this case, *Costello* upheld a district court decision to deny an abstention motion when the district court was prepared to grant a preliminary injunction after having taken elaborate steps to obtain evidence informing that decision. *Costello* noted that the district court did not have to abstain on issuing its planned ruling "merely because the litigants have raised a somewhat similar issue in state civil litigation long after the federal court has taken jurisdiction and has taken significant and substantial procedural steps" to resolve the dispute. *Id*. at 1246.

Moreover, the "significant and substantial procedural steps" referenced in *Costello*, in fact, involved proceedings of substance on the merits. Specifically, the district court appointed a special master to evaluate prison overcrowding issues and the special master's report—rendered after 20 months of intensive work—was intended to guide—and in fact did guide—the district court in its ultimate determination of the merits of the plaintiffs' request for relief.

48

In short, the facts in this case differ in all important respects from those in *Costello*. Moreover, *Costello* never even mentioned *Hicks* or *Doran*, used the phrase "embryonic stage," opined on what it takes to move past such a stage, or purported to define the limits of *Younger* abstention. *Costello*, 525 F.2d at 1246. In short, it provides no helpful guidance here and certainly does not stand for the proposition that mere procedural steps—and certainly those as minimal as occurred in this case—can bar *Younger* abstention when there have been no proceedings of substance on the merits. Had *Costello* so asserted such a proposition, its interpretation would have contradicted controlling authority. *Hicks*, 422 U.S. at 349 ("where state criminal proceedings are begun . . . <u>before any proceedings of substance on the merits</u> have taken place in the federal court, the principles of <u>*Younger v. Harris* should apply in full force</u>") (emphasis added).[5]

---

[5] The majority cites authority that it views as "consistent" with interpreting *Costello* to preclude *Younger* abstention based on procedural steps not involving the merits. See Maj. Op. at 34–35. In my view, this cited authority provides no support for that proposition. *For Your Eyes Alone* deemed *Younger* abstention inappropriate after a "through evidentiary hearing" on the merits of plaintiffs' claim and cited the "lack of any hearings" in *Hicks* and *Doran* as a key distinguisher. *For Your Eyes Alone*, 281 F.3d at 1218–19. Likewise, the Ninth Circuit in *Nationwide* stated "the relevant inquiry, in examining the history of the case, is the extent of the district court's involvement in the merits." *Nationwide Biweekly Admin.*, 873 F.3d at 728. The *Nationwide* court concluded that *Younger* abstention was not warranted because "the district court had already conducted proceedings of substance on the merits." *Id.* at 729 (stating "the district court spent a substantial amount of time evaluating the merits of the cases in considering and denying (in a detailed and reasoned order) Nationwide's motions for preliminary injunctions"). Indeed, the *Nationwide* court distinguished the district court's substantive orders on the merits, which involved 21 pages of "legal discussion of the merits" following evaluation of "250 pages of declarations, affidavits, and exhibits," from "denying the motions on a non-merits ground—such as ripeness, standing", or other non-merit factors. *Id.* Thus, when looking at all of the

The majority further states: "Supreme Court precedent suggests that for abstention purposes we look to events occurring from the time a federal action is first filed."  In support of that broad proposition, the majority cites to a footnote in *Town of Lockport v. Citizens for Community Action at Local Level*, 430 U.S. 259, 264 n.8 (1977).  Majority Op. at 27.  In that case, the Supreme Court addressed whether a particular method for enacting a New York county charter violated the Equal Protection Clause.  The only mention of abstention occurred in the cited footnote in which the Court rejected the local government's argument that the federal district court should have lateraled the challenge to the state court in which a subsequent claim had been filed.  The Supreme Court expressed uncertainty whether *Younger* even applied fully in a civil context, but concluded that, at any rate "principles of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court."  *Id*.  There was no mention of *Doran* or *Hicks*, or the standards articulated in those cases.  Moreover, unlike in this case where the state court was the only court to have taken substantive action on the operative ordinance, in *Lockport*, there had been no rescission of the ordinance at issue when

developments in the history of a case, we should do so with an eye toward discerning whether any of them involved proceedings of substance on the merits of the claims subject to abstention.

50

the federal suit was brought and both the federal and state courts were looking at the same ordinance.

As to the majority's concern that affirming the district court's decision to abstain "would sanction the reverse removal power this Court has counseled against," I understand that concern, but do not think a decision finding no abuse of discretion by the district court on these facts would reasonably support such a characterization. *See* Majority Op. at 30. To be sure, *For Your Eyes Alone* cautions us to consider the risk of "creating an expansive 'reverse removal power.'" *For Your Eyes Alone*, 281 F.3d at 1219. But the unique facts of this case present little such risk. Unlike in *For Your Eyes Alone*, the district court here had not conducted a "thorough evidentiary hearing" nor had it substantively ruled on any issues pertinent to the merits of Plaintiff's new claims prior to commencement of the state court action. Likewise, Defendant had not litigated the merits of Plaintiff's new claims before commencing the state court action, as the City had done in *For Your Eyes Alone*.

That our court in an earlier appeal determined that the district court here had wrongly denied Plaintiff's motion to amend its complaint to add the new-code claims (a motion that was filed before the state court action began) does not mean that the district court abused its discretion when it later abstained on a claim for which there had nonetheless been no substantive federal litigation, but there had

51

been substantive state litigation.  Plaintiff's attempt to amend its complaint and establish federal court jurisdiction over its new claims was no more significant a step than the actual filing of a separate district court action would itself have been.  Yet, we would not hold that such a newly-filed, second federal action on which there had been no substantive litigation would bar abstention if that second action was itself the subject of a prior and ongoing state enforcement proceeding.  *See Hicks*, 422 U.S. at 349 (abstention warranted <u>even when federal action filed first</u> if there have been no "proceedings of substance on the merits").

Nor is it clear, as the majority asserts, that "[h]ad the District Court granted Tokyo Valentino's request to add claims about the new ordinances, shortly after they were enacted, there would be no dispute about the fact that Tokyo Valentino's action preceded any state court proceedings."  *See* Majority Op. at 31.  The *Younger* abstention analysis focuses on the extent of "proceedings of substance on the merits" in federal court, *Hicks*, 422 U.S. at 349, not the order actions were filed nor the length of time claims have been pending in federal court.  And there is no basis to conclude that any proceedings of substance on the merits would have occurred in the few months after Plaintiff moved to amend its complaint and before Defendant filed the state enforcement action.  Regardless, we must focus on whether there have been actual proceedings of substance on the merits, not whether proceedings of substance on the merits might have occurred had Defendant not

52

opposed Plaintiff's motion to amend or the district court had not denied its motion. *See Forty One News*, 491 F.3d at 666 (rejecting plaintiff's argument that dismissal on *Younger* grounds would be unjust because defendant's successive motions to dismiss prevented maturation of the case beyond the embryonic stage and affirming *Younger* abstention where "nothing important relating to the merits" happened in the seven months the case was pending in federal court before the filing of a state enforcement action).[6]

Moreover, rather than await the outcome of its appeal challenging the denial of the motion to amend or file a new action in federal court asserting its new code claims, Plaintiff voluntarily chose to violate the new adult code and invite a state court enforcement action. "Having violated the ordinance, rather than awaiting the normal development of its federal lawsuit, [plaintiff] cannot now be heard to complain that its constitutional contentions are being resolved in a state court."

---

[6] The majority cites *Hill v. Snyder*, 878 F.3d 193 (6th Cir. 2017), for the proposition that *Younger* abstention is inappropriate at a "late stage" and that Plaintiff should not be "punished" because of the district court's error in denying its motion to amend. *See* Majority Op. at 31. But expressing its reluctance to even entertain an argument for abstention in a case in which the parties had "already expended significant resources to resolve the federal claims," with both the court and the parties having "litigated [the] case for seven years, including engaging in discovery, a costly and burdensome process," the Sixth Circuit engaged in little analysis of the settled principles underlying a *Younger* challenge. *Id.* at 206. Indeed, that case involves little similarity to the present case, as the court later noted that during the seven-year pendency of the federal case, "[s]ubstantive proceedings on the merits of [p]laintiffs' overarching claim . . . occurred in that time period." *Id.* at 206–07. This case is very different. Like *Forty One News*, this case had been pending only for several months, not several years, when the state enforcement action was filed. Also like *Forty One News*, I "have no trouble concluding that nothing important relating to the merits has happened" on any of Plaintiff's claims. *Forty One News*, 491 F.3d at 666.

*Doran*, 422 U.S. at 928–29. In short, Plaintiff had the ability to ensure that its preference for a federal forum would not be defeated by a state enforcement action. Yet, Plaintiff chose not to exercise this option, presumably content to take advantage of a lengthy appeals process while it continued to violate the new adult code.[7]

For Your Eyes Alone* instructs us to "attempt to strike [a] balance" between the risk of creating a "reverse removal power" and the principles that underlie *Younger* abstention, rather than focus disproportionately on the length of time Plaintiff had, or could have had, pertinent claims pending in federal court. *For Your Eyes Alone*, 281 F.3d at 1219. Although not considered by the majority, Defendant's interest in enforcement of its codes against Plaintiff's ongoing violations must also figure in the balance when weighing the respect due Plaintiff's choice of forum. *Doran*, 422 U.S. at 929. Plaintiff's choice of a federal forum cannot be the sole concern because "[d]enial of a preferred federal forum for

---

[7] The majority concludes that this case is different because "Tokyo Valentino was already operating its business when the new code was enacted." *See* Majority Op. at 32. But that was also true of each of the three adult establishment plaintiffs in *Doran*. *Doran*, 422 U.S. at 924 ("Prior to enactment of the ordinance in question, each provided topless dancing as entertainment for its customers."). Those plaintiffs that ceased topless dancing in view of the new ordinance were permitted to stay in federal court. The one plaintiff that chose to violate the new ordinance after filing a federal action was forced by the Supreme Court to litigate the enforcement action in state court. *Id*. at 929 ("Respondent M & L could have pursued the course taken by the other respondents" but instead continued topless dancing and "subjected itself to prosecution for violation of the ordinance in the state court."). Moreover, Plaintiff here could have avoided a state enforcement action, and could have still operated its business, had it simply decided to suspend the sale of any sex devices until the federal action challenging the state ordinance had been completed.

54

federal claims is often the result of the application of *Younger* abstention." *Forty One News*, 491 F.3d at 667.

As to the proper outcome of such an examination, I cannot conclude that the district court clearly erred in striking that balance in favor of abstention on the new-code claims. Indeed, *Doran* accorded great weight to the state government's interest in enforcing adult ordinances when it forced into state court the one plaintiff that had violated an adult entertainment ordinance (and thereby become subject to an enforcement action) after filing a federal action, while allowing other plaintiffs running similar businesses and making the same First and Fourteenth Amendment challenges to that ordinance to proceed in district court. *Doran*, 422 U.S. at 927–29. In doing so, *Doran* elevates the state governmental enforcement interest over the interests of jurisdictional certainty, conservation of judicial energy, avoidance of contradictory outcomes, and avoidance of what the district court there had deemed an "anomalous" result. *Id*. at 926. Similarly, and based on that precedent, I do not conclude that the district court here abused its discretion when it abstained based on the ongoing state enforcement action, in which action the state court, in contrast to the district court, had already conducted substantive proceedings on the merits at the time that the district court abstained.

### III.    The District Court Did Not Abuse Its Discretion in Abstaining on the New-Code Claims

I end where I began.  The pertinent standard of review is abuse of discretion, and the district court did not abuse its discretion when it abstained from adjudicating Plaintiff's challenge to the new ordinance.  Because the proper focus of the "ongoing" state-proceeding prong of the *Younger* inquiry is on the substantive progress made by the district court in adjudicating the merit of claims subject to possible abstention, and because the district court here had taken no substantive action on the challenges to the new ordinance, I respectfully disagree with the majority's conclusion that the district court abused its discretion in abstaining from hearing Plaintiff's claims challenging Defendant's new adult entertainment code.  A faithful review of the caselaw demonstrates that the district court exercised its discretion within the narrow and specific limits prescribed by the *Younger* abstention doctrine.  *Frazier*, 387 F.3d at 1259 (the abuse of discretion standard "recognizes [a] range of possible conclusions the trial judge may reach"); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 669 (11th Cir. 2010) (relevant abuse of discretion inquiry is "whether the district court's decision was tenable—in the 'range of possible conclusions,' or, metaphorically, 'in the ballpark'").

56

For the above reasons, I therefore respectfully dissent from that portion of the majority opinion reversing the district court's decision to abstain from hearing claims challenging the new code.